CONGREGATION OF UNITED BRETHREN OF SALEM AND VICINITY v. COMMISSIONERS OF FORSYTH COUNTY.

*Taxation—Exemption—Property used for Educational or Religious Purposes.*

1. Under section 5 of Art. 5 of the Constitution, the Legislature may exercise to the full extent, or in part, the power to exempt from taxation property held for educational, scientific, literary, charitable or religious purposes, or may decline to exempt at all. The constitutional provision being in the disjunctive, the Legislature can exempt the property up to a certain value, and tax all above it, and may also tax property held for one of the purposes named, and exempt that held for others.

2. Under chapter 137, Acts of 1887, chapter 218, Acts of 1889, and chapter 326, Acts of 1891, exempting from taxation property set apart and exclusively used for religious, charitable or educational purposes, only such property was meant as was used directly, immediately and solely for the purposes named, and hence property rented out was not exempt, though the rents, so applied, were.

3. Under section 20, chapter 296, Acts of 1893, the exemption given by the previous acts named was extended so as to include property rented out, provided the rental should be applied *exclusively to the support of the Gospel.*

4. Solvent credits held by a religious society, the income from which is applied exclusively and faithfully to educational, religious and charitable purposes, are exempt from taxation under the Act of 1893, but any part of the fund on which the interest is not so applied, but is allowed to accumulate, is not exempt.

5. A parcel of land of twenty acres, lying within the corporate limits of a town and belonging to a religious society, and on one part of which is a church, situated on a lot fenced in, of about two acres— the same being held for sale, excepting the church lot—is not, other than the church lot, exempt from taxation.

6. A tract of eighty acres, chiefly in forest, lying near a town, held by a religious society, on one side of which is situated a schoolhouse, is not exempt from taxation, except such part of it as is necessary for the school.

7. A town residence belonging to a religious society, not needed or used for a church, parsonage, school or hospital, but rented out, is not exempt from taxation; otherwise as to the rental applied to reli- gious, educational or charitable purposes.

Application for an injunction to restrain the collection of tax, heard before *Battle, J.*, at August Term, 1894, of Forsyth Superior Court, upon a restraining order theretofore issued by *Whitaker, J.*

His Honor found the following facts:

"1. All the allegations of fact contained in the complaint and not denied in the answer; and further,

"2. That the plaintiff corporation owned, on June 1, 1893, and owns now, owning other property, the following:

"(a) Solvent credits, notes against individuals secured by mortgages, amounting to $87,043.48.

"(b) A parcel of land containing about twenty acres, lying in the town of Winston, said land being known as 'The Reservation.'

"On the north side of said tract is a church, covering about one-third of an acre, situated on a lot of less than two acres surrounded by a fence. Leaving out this two-acre lot, the residue of 'The Reservation' is worth $18,000. A number of lots have been cut off from said tract (reducing it to its

present area) and sold by the plaintiff corporation, some within the last four years, at prices from $800 to $1,000 per lot of seventy-five feet by one hundred and forty feet. Public notice was given in 1891 that these lots were for sale. The south end of 'The Reservation' is now leased to certain parties. It has been in contemplation by many members of the congregation, though no official action has been taken, to hold 'The Reservation' as an endowment for Calvary Chapel (the church built on the north side of the tract).

"(c) A tract of land in West Salem, containing about eighty acres, worth $5,000. This tract is chiefly forest land. There stands on the eastern side a school-house. The land necessary for this school does not exceed two acres. ·

"(d) A house and lot in the town of Salem, known as the Bishop's house, worth $3,000, which is rented out as a residence, the plaintiff corporation receiving rents therefrom.

"3. The plaintiff owned all said property, and the status of the same was as above stated during the years 1887, 1888, 1889, 1890 and 1892.

"4. The said property (the solvent credits, 'The Reservation,' less two acres on which the church is situated, the eighty-acre tract less the two acres on which the school is situated and the Bishop's house), was placed on the tax lists by the defendant Commissioners for the years 1887, 1888, 1889, 1890, 1892 and 1893, each piece of land at a valuation not more than it was worth.

"As for the solvent credits, the amounts at which they were listed, as stated in 6th article of complaint, were for each year considerably less than the solvent credits actually owned by the plaintiff.

"5. That the taxes assessed as aforesaid against the plaintiff were State taxes at the fixed rates, county taxes for general purposes, at the fixed rates; also a sum levied and assessed to pay bonds and interest on bonds for the extension of the Northwestern North Carolina Railroad, to which improve-

ment Winston township subscribed for stock and issued its bonds for $60,000.

" Also, to pay bonds and interest on bonds of the Roanoke and Southern Railway, to which improvement Winston township subscribed for stock and issued its bonds for $100,000.

"Since the year 1890, and now, a levy has been and is annually made on the property in said township of twenty cents on the $100 worth of property on account of said railroad bonds.

" All the personal property of the plaintiff corporation, its principal place of business and the residences of its officers and nearly all its lands are located in said township. The plaintiff makes no question about the propriety of levying taxes to pay these bonds on property other than that held for educational, charitable or religious purposes, and on account of these bonds its property has been taxed as other property in the township.

" 6. That said property was never listed by its owner for the years above named, and no taxes have ever been paid thereon.

" 7. That the rents and profits, and the interest from said property, and all the property of the plaintiff corporation has been strictly and faithfully applied to educational, charitable and religious uses as directed in the 12th section of chapter 48, Private Laws of 1873-'4."

His Honor held as matters of law on these facts—

" 1. That the general principle on which taxation is to be levied is that of uniformity, exemptions are exceptional and to be construed strictly, and every reasonable doubt is to be resolved against the exemption.

" 2. That the provision in the Constitution which allows the General Assembly to exempt from taxation property held for educational, charitable or religious purposes, contemplates the direct or immediate use for such purposes. Property used for farming or in manufacturing or in trades, can-

not fairly be said to be " used exclusively for religious, charitable or educational purposes " (in the language of the Revenue Acts), even though the resulting profits may be exclusively directed to such purposes.

" 3. That as for the second proviso in Acts 1893, chapter 296, sec. 20, subsec. (2), it is not warranted by the Constitution, and further is not broad enough to cover the property here sought to be taxed.

" 4. That on the facts found by the Court, the plaintiff corporation is liable for the taxes, the collection of which it seeks to enjoin."

From the judgment dissolving the restraining order and refusing the injunction, the plaintiff appealed.

*Messrs. Watson & Buxton,* for plaintiffs (appellants).
*Messrs. Glenn & Manly,* for defendants.

CLARK, J.: The Constitution, Article V., sec. 5, empowers the Legislature to exempt from taxation " property *held* for educational, scientific, literary, charitable or religious purposes." This is the limit. The Legislature can exercise this power to the full extent, or in part, or decline to exempt at all. It can exempt one kind of property held for such purposes, either realty or personalty, and tax other kinds. It can exempt partially, as for instance up to a certain value, and tax all above it. It can exempt the property held for one or more of those purposes and tax that held for others— as for instance, it may exempt churches or other property held for religious purposes, and tax buildings or other property held for scientific or literary purposes, for the constitutional provision is in the disjunctive, and authorizes the Legislature to exempt property held " for educational, scientific, literary, charitable *or* religious purposes." The property which is left subject to tax will be taxed uniformly as laid down in *Redmond* v. *Commissioners,* 106 N. C., 122. It is the power of exemption, within the limit, which is discretionary.

Whether the Legislature can discriminate in the same class by exempting to a large value the property of a college or university, and to a smaller amount the property of an academy or high school, is a large question which is not before us, for there is here no attempt to discriminate between corporations holding property for the same purpose, and any expression of opinion on that point would be *obiter dictum*. The Legislature has used its discretion of discriminating between the classes by exempting property held for religious purposes when rented out "if the rentals are applied exclusively to the support of the gospel," while refusing to exempt any property held for the other classes if rented out. But it has not discriminated between institutions in the same class.

The act of the Legislature being therefore well within the constitutional discretion reposed in them, it only remains to apply it to the case in hand. Acts 1887, ch. 137, sec. 21, sub. sec. 2, exempts from taxation "property belonging to and set apart and exclusively used for the university, colleges, institutions of learning, academies, the Masonic fraternity, Order of Odd Fellows, Knights of Pythias, Independent Order of Mechanics, Good Templars and Friends of Temperance, Knights of Honor, Good Samaritans and Brothers and Sisters of Love and Charity, Royal Arcanum, Hibernian Benevolent Society of Wilmington, the Israel and Priscilla Tent of Wilmington, schools for the education of the youth, or the support of the poor and afflicted, orphan asylums, such property as may be set apart for and appropriated to the exercise of divine worship or the propagation of the gospel or used as parsonages, the same being the property of any religious denomination or society: *Provided*, that any such property is used exclusively for religious, charitable or educational purposes."

Thus the Legislature did not go to its full constitutional power of exempting all property *held* for the purposes named, but restricted the exemption to the property "belonging to

and set apart and exclusively used" for such purposes. It emphasizes this by again repeating in the proviso, if "such property is used exclusively for religious, charitable or educational purposes." This statute is copied in the Acts of 1889, ch. 218, sec. 23, and 1891, ch. 326, sec. 21. By the words "set apart and exclusively used," is contemplated such property as is used directly, immediately and solely for the purposes named. Property rented out is not "so set apart and used," even though the rents may be so applied. That would exempt the rents but not the real estate itself. This was thought to work a hardship as to church property, so the Act of 1893, ch. 296, sec. 20, extends the exemption as to property held for religious purposes, even though rented out. The proviso under that act, reads, "*Provided*, that all property not used exclusively for religious, charitable or educational purposes, or which is held for the purpose of speculating in the sale thereof, investment or for rent, shall not be exempt; *Provided further*, that when the rental from such property is applied exclusively to the support of the gospel, the property shall not be taxed."

It was, and is, competent for the Legislature to also exempt property whose rental is applied to educational or charitable purposes, but it has not so enacted. That matter rests in the legislative discretion.

The property sought by the plaintiff to be exempted, in addition to its large property admittedly exempt, consisted of (1) solvent credits and notes secured by mortgage amounting to $87,043.48. It is found as a fact that the interest on these is applied exclusively and faithfully to educational, religious and charitable purposes. It seems to us that the *corpus* of this fund is "set apart and used exclusively" for such purposes. It is the only mode in which it can be so set apart and used, and it is therefore exempt until the Legislature shall declare its will to tax it. This fund is not held for "investment" in the meaning of the proviso, for that con-

templates the holding of the property for the benefit of the corporation, to await enhancement or future use, but here the whole use—the interest—is applied as received, for the purposes named. Any part of such fund on which the interest is not so applied, but is allowed to accumulate, would not be exempt. (2) The second piece of property is a parcel of land of about twenty acres in the town of Winston, known as "The Reservation." On the north side is a church, covering about one-third of an acre, situated on a lot fenced in of about two acres. Excluding these two acres, the reservation is found to be worth $18,000. A number of lots have heretofore been sold off, leaving the tract of the present dimensions, and public notice has been given that lots were for sale. A part of it is now under lease. This property (leaving out the church enclosure) is certainly not in use for educational, charitable or religious purposes, and was properly held liable to taxation. (3) A tract of eighty acres in West Salem, chiefly in forest, and worth $5,000. A schoolhouse stands on the eastern side. It is found as a fact that only about two acres were necessary for the use of the school. It was properly held that the remainder of the tract was liable to taxation. It would be advantageous no doubt to the corporation to hold the unused seventy-eight acres as an investment, and reap the benefit of the increased value which will come to real estate adjacent to a growing and prosperous town like Winston, but in the meantime such property must bear its share of the public burdens. The exemption is for property now used for religious, charitable or educational purposes, and not for property abstracted from all use or used to create a large fund in future, which fund when so created, may be used for such purposes. When so used, it will be exempt (subject to legislative change), but not till then. (4) A house and lot in the town of Salem, known as the "Bishop's House," worth $3,000, which is rented out as a residence, the corporation receiving the rents therefor,

which are applied to religious, charitable and educational purposes. For the reasons heretofore stated, the rents are exempt from taxation, but not the house and lot. The house not being needed for religious, charitable or educational purposes, nor used for a church, parsonage, school or hospital, the corporation is showing business judgment in renting it out. But the act of Assembly only exempts from taxation property which is used for the specified purposes which, in this case, is the rent. The Legislature can exempt property whose rental is so applied, but so far it has only granted exemption to property rented out when the rental is "applied exclusively to the support of the gospel." *Expressio unius, exclusio alterius.* The house and lot would be equally subject to taxation if not rented out and unused. It is only property used for the specified purposes which is exempt.

The general rule is liability to taxation, and that all property shall contribute its share to the support of the government which protects it. Exemption from taxation is exceptional. It needs no citation from reiterated precedents that such exemptions should be strictly construed, and that if we had any doubts (which we have not), they should be resolved in favor of liability to taxation. *Railroad* v. *Alsbrook,* 110 N. C., 137. As above modified, the judgment is

Affirmed.