JOHN P. STEDMAN, TREASURER STATE OF NORTH CAROLINA, v.
CITY OF WINSTON-SALEM.

(Filed 22 February, 1933.)

1. **Taxation B b—**

Our State gasoline tax is an excise and not a property tax. C. S.,
2613(i5).

2. **Taxation B d—Gasoline tax on municipalities held constitutional.**

Under the provisions of our Constitution, Art. V, sec. 5, the General
Assembly is prohibited from levying a property tax on property owned by
municipal corporations, but the prohibition does not extend to excise
taxes, and under the provisions of C. S., 2613(i5), a municipality is liable
for the gasoline tax on gasoline bought by it in bulk and distributed
by it to its various departments for use in its governmental functions.

3. **Same—**

Exemptions from taxation must be strictly construed in favor of the
taxing power.

4. **Statutes A e—**

An act will not be held unconstitutional unless its invalidity appears
beyond a reasonable doubt, and where two reasonable interpretations are
possible that one will be adopted which sustains the statute.

5. **Constitutional Law A a—**

The expansion of commercial life and the complexity of social con-
tacts and obligations demand a liberalization of constitutional interpreta-
tion.

CIVIL ACTION, before *Devin, J.,* at March Term, 1932, of WAKE.

The defendant is a municipal corporation existing by virtue of chapter
232, Private Laws of 1927. On 3 December, 1931, the city of Winston-
Salem purchased from the American Oil Company in Norfolk, Virginia,
a tank car load of gasoline, containing 10,203 gallons, and caused the
same to be shipped to the city of Winston-Salem, North Carolina, and
unloaded the same into a storage tank. This gasoline was to be used in
motors operated by the public works department of the defendant and in
operating automobiles used by the police department in the prosecution
of crime, and in constructing and maintaining streets and highways,
collection of garbage, automobiles used by the agents of the health de-
partment and other activities of a governmental nature. C. S., 2613(i5),
levies a tax of six cents per gallon "on all motor fuel, sold, distributed,
or used within this State. The tax hereby levied shall be collected and
paid by the distributor producing . . . or holding in possession
within the State, and shall be paid by such distributor to the Commis-
sioner of Revenue," etc. C. S., (i1), defines a distributor as "any person,

firm, association of persons, corporation, municipality, county, or other political subdivision that has on hand motor fuels . . . for sale, distribution, or use herein."

The plaintiff, treasurer, instituted this action to collect from the defendant the sum of $612.18 upon said motor fuel. The trial judge was of the opinion that the plaintiff was not entitled to recover, and from such judgment the plaintiff appealed.

*Attorney-General Brummitt and Assistant Attorneys-General Siler and Ross for plaintiff.*
*Parrish & Deal for defendant.*

BROGDEN, J. (1) Is the gasoline tax a property tax or an excise tax?
(2) If an excise tax, is the same invalid by virtue of the constitutional exemption in Article V, section 5 thereof?

A phase of this case was heretofore considered in *O'Berry v. Mecklenburg County,* 198 N. C., 357, 151 S. E., 880. The statute then in force did not expressly include a municipality or political subdivision of the State within the definition of distributor. Consequently, the Court held that a county was not a distributor and liable for the tax on motor fuel used by such county in the discharge of its governmental functions. Perhaps, as a result of that decision, the General Assembly in 1931, as heretofore indicated, expressly included a municipality within the definition of a distributor.

The defendant asserts that the statute is unconstitutional because it invades or violates Article V, section 5, of the Constitution. The pertinent portion of this provision is that: "property belonging to the State or to municipal corporations shall be exempt from taxation." The word "property" has been defined by this Court as "rightful dominion over external objects; ownership; the unrestricted and exclusive right to a thing; the right to dispose of the substance of a thing in every legal way, to possess it, to use it and to exclude every one else from interfering with it. Property is the highest right a man can have to anything, being used for that right which one has to lands or tenements, goods or chattels, which no way depends on another man's courtesy. A right imparting to the owner a power of indefinite user, capable of being transmitted to universal successors by way of descent and imparting to the owner the right of disposition." *Vann v. Edwards,* 135 N. C., 661, 47 S. E., 784. Thus, it would appear that property is a right of exclusive dominion and unrestricted user, within the law. Hence, in order to support the tax, it must be conceived that tangible property is one thing and the use and enjoyment thereof another thing so as to achieve

a result whereby the one may be exempt and the other taxed. This result has been achieved by assuming that a tax on the use of property is an excise tax, while the tax upon the property itself is an *ad valorem* tax. Courts and text-writers generally have reached the conclusion that a gasoline tax of the type involved in this suit, is an excise tax. Furthermore, the decisions are in accord upon the proposition that constitutional exemptions are ordinarily applicable only to *ad valorem* taxes. This view is held by the courts of Florida, Tennessee, Kentucky, Colorado, Idaho, Utah, New Mexico and South Carolina. See *Orange State Oil Co. v. Amos,* 130 Southern, 707; *Foster & Creighton Co. v. Graham,* 285 S. W., 570; *People v. City and County of Denver,* 272 Pac., 629; *Independent School District v. Pfost,* 4 Pac. (2d), 377; *City of Greenville v. Query,* 164 S. E., 844. *Bowman v. Continental Oil Co.,* 256 U. S., 642; *Hart Refineries v. Harmon,* 278 U. S., 499; *Breece Lumber Co. v. Mirabal, Comptroller,* 287 Pac., 699, affirmed 283 U. S., 788.

One of the latest decisions is the *Query case, supra.* Article X, section 4, of the Constitution of South Carolina provides: "There shall be exempted from taxation all county, township and municipal property used exclusively for public purposes." The Court said: "There is no inhibition in our Constitution on the power of the General Assembly to impose excise taxes. As the provisions of Article X deal only with *ad valorem* taxes on property (and, in addition, with license taxes on occupations and businesses, income taxes, and others expressly therein named), it would seem logically to follow that the exemptions provided for in that article would apply only to the kinds of taxes therein dealt with and regulated. As neither this provision of the Constitution, nor any other, in any way refer to excise taxes, we hold that the exemptions therein allowed cannot be claimed against such taxes. In this conclusion we are not without support from eminent authority."

Moreover, it has been consistently held in this State that the court will not declare an act of the Legislature unconstitutional unless the invalidity appears beyond a reasonable doubt. Thus, if the validity of a statute is assailed, and there are two possible interpretations, that interpretation will be upheld which sustains the statute. Also, it has been generally held that exemption from taxation must be strictly construed in favor of the taxing power.

The judicial denomination of a tax as an excise tax or a property tax is a mere use of terms and the selection of certain letters from the alphabet. The ultimate test is the operation of the tax and its practical application to the commercial transactions of life. Nevertheless, it must be conceded and recognized that the expansion of commercial life and the complexity of social contacts and obligations have constantly demanded a broadening of taxing power; perhaps, not fully conceived and

appraised by our ancestors in framing constitutional exemptions. Consequently, economic necessity has demanded and continues to demand a liberalization of constitutional interpretation. This liberalizing necessity was applied by *Brown, J.,* in the absentee voter case. In *Jenkins v. Board of Elections,* 180 N. C., 169, 85 S. E., 289, he wrote: "The fact that this law originated from extraordinary emergency, and was not contemplated by the framers of the Constitution, can make no difference. If the power resides in the legislators, they may exercise it and apply it to all voters, whether soldiers or not. A power not limited or withheld abides in the people, and in such case the Legislature, like Parliament, is omnipotent. . . . A constitution should not receive a technical construction as if it were an ordinary instrument or statute. It should be interpreted so as to carry out the general principles of the government, and not defeat them." The opinion quotes the following: "When we construe a constitution by implication of such rigor and inflexibility as to defeat the legislative regulations, we not only violate accepted principles of interpretation, but we destroy the rights which the Constitution intended to guard."

The money derived from the gasoline tax is to be used in the general maintenance of the highway system of the State, and, as our Constitution does not forbid the levy of excise taxes for such purposes, and as the General Assembly has expressly included municipalities within the definition of distributors using motor fuel, this Court is not inclined to strike down the statute.

Reversed.