TOWN OF BENSON, A MUNICIPAL CORPORATION, v. COUNTY OF JOHNSTON.

(Filed 8 April, 1936.)

1. **Taxation B d—Property acquired by municipality by tax foreclosure and rented by it held not exempt from county taxation.**

   Plaintiff municipality acquired certain property within its corporate limits by tax foreclosure. After acquisition of the property the municipality rented same, and received the rents therefrom. The county levied *ad valorem* taxes against the property, and the municipality contended that the property was exempt from taxation from the date the municipality acquired title. *Held:* The property is liable for the county taxes, since it is not used by the city for a governmental purpose, and therefore does not come within the constitutional provision for the exemption of property from taxation, N. C. Constitution, Art. V, sec. 5, or within the scope of the statutes enacted pursuant thereto. N. C. Code, 7880 (2), (177).

2. **Same—**

   Exemptions of property from taxation are to be strictly construed.

   DEVIN, J., dissenting.

APPEAL from *Daniels, Emergency Judge,* at February Term, 1936, of JOHNSTON. Affirmed.

This is a controversy without action, N. C. Code, 1935 (Michie), sec. 626. The agreed statement of facts is as follows:

"1. The town of Benson, North Carolina, is a municipal corporation, created by an act of the General Assembly of North Carolina, chapter 63, Private Laws of 1915, and is vested with all the rights conferred by its charter and by the statutory law of North Carolina pertaining to municipal corporations. The county of Johnston is a body politic under the statutes of North Carolina.

"2. That the town of Benson duly instituted an action in the Superior Court of Johnston County, entitled 'Town of Benson *v.* J. C. Warren and Wife, Mrs. J. C. Warren,' for the purpose of foreclosing tax certificate on account of the nonpayment of taxes levied and assessed against the property hereinafter described, and said property was acquired by the town of Benson from the commissioner appointed in said action, on 6 January, 1934, and is now the lawful owner in fee simple of said property, the deed conveying the same to the town being of record in Book No. 306, page 494, registry of Johnston County, and said property is described as follows: Lot No. 1, in Block No. 21, according to map of the town of Benson, made by Riddick, Mann and Hales in 1914, said map being of record in the office of the register of deeds for Johnston County. The property herein described being situate on Parrish Drive (formerly Mill Street), in the town of Benson, North Carolina.

BENSON v. JOHNSTON COUNTY.

"3. The county of Johnston instituted foreclosure proceedings on account of the nonpayment of taxes due said county by the Benson Creamery Corporation, and prosecuted said action to judgment, wherein C. C. Canaday was appointed commissioner to sell and convey, and thereafter, on 10 May, 1932, the town of Benson having become the purchaser at said foreclosure sale, the said C. C. Canaday, commissioner, executed and delivered to the town of Benson a deed of conveyance, stipulating a consideration of $1,174.76, and described and conveyed the following property:

"One lot fronting Wall Street, same being Highway No. 22, and is Lot No. 1, in Block No. 45, according to the map of the town of Benson prepared by W. J. Lambert, surveyor, and is Lot No. 17, in Block No. 33, according to the map of the Alonzo Parrish property, and is bounded on the north by the land of D. J. Hill; on the east by Wall Street, or State Highway No. 22; on the south by the land of C. T. Johnson; and on the west by a lot of land formerly owned by Alonzo Parrish, said lot fronting Highway No. 22—60 feet and running back 50 feet, being a lot 60 by 50 feet.

"This conveyance is made as of 8 February, 1932, and the property herein conveyed shall not be chargeable with 1932 and 1933 county ad valorem taxes.

"That the deed bears date of 10 May, 1932, and was filed for registration on 7 February, 1934, and registered in Book No. 306, page No. 494, office of the register of deeds for Johnston County. The said commissioner paid the receipts of the sale to the county of Johnston, and said receipts were sufficient to pay all taxes to the county of Johnston up to and including 1931. The town of Benson has been in possession of said property since such sale and is the owner of same in fee simple.

"4. There is a dwelling house upon the first parcel of land hereinbefore described, and a small building upon the other parcel now used as a hatchery. The town of Benson has, since obtaining title to said two parcels of property, received a small monthly rental, which has gone into the treasury of the town for general municipal purposes.

"5. The town of Benson is now endeavoring to refund its bonded indebtedness and has prepared and promulgated a refunding plan, bearing date of 1 December, 1934. That said refunding plan contains the following provision:

" 'Moneys derived from the sale or from the redemption of the twenty-two parcels of property heretofore taken over for delinquent taxes and assessments, as well as the net income, if any, derived from the operation of said properties, will be paid into the sinking fund for the funding bonds.'

"That the two parcels of land hereinbefore described constitute a part of the twenty-two parcels referred to in the above quoted provision.

"6. The town of Benson offered the two parcels of property referred to for sale, and has received *bona fide* bids to purchase said property at an agreed price from the firm of Blackman and Massengill and Wade F. Johnson, who require the title to be in fee simple, free and clear of all liens, encumbrances, and taxes. There are no liens or encumbrances upon said property, excepting that the county of Johnston claims taxes against the first parcel of land herein described (J. C. Warren property), for the years *1929 to 1935,* both years inclusive, and upon the second parcel of property referred to (Creamery property), for the years *1932 to 1935,* both years inclusive, the town of Benson admits that the Warren property is subject to county taxes for the years 1929 to 1933, inclusive, being prior to the time the town took title to said property, but denies that the county is entitled to any taxes upon said property since the town of Benson took title thereto; the town further denies that the county is entitled to assess taxes as a lien against the Creamery property since the town acquired title thereto, and during the period title to said property, as well as the other parcel referred to, is vested in said town of Benson.

"7. Under the duly constituted authority, the board of county commissioners of Johnston County have assessed said property for taxation during the period the title to same has been vested in the town of Benson, and have levied a tax against same, which plaintiff refuses to pay; and the tax collector has advertised said property to be sold for taxes for the aforesaid years. The proposed purchasers have refused to accept title while this claim of tax lien remains unsettled against said property. The plaintiff denies that the county of Johnston is permitted to tax said property during the period it remains vested in the plaintiff municipal corporation, and therefore refuses to pay the same.

"Wherefore, the parties hereto have agreed upon the foregoing facts, and respectfully urge a speedy determination of the matter of law involved in this controversy. The matter in controversy being whether or not such tax may be assessed as a lien against said property for and during the period title to same is vested in said town of Benson.

"This 14 February, 1936.

> L. L. LEVINSON,
> *Atty. for Plaintiff.*
> W. J. HOOKS,
> *Atty. for Defendant.*

"Jurat."

The judgment of the court below is as follows: "This cause coming on to be heard, and being heard by his Honor, F. A. Daniels, judge presiding, at the February Term, 1936, of the Superior Court of Johnston County, by consent, upon an agreed statement of facts submitted

in a controversy without action: It is therefore considered, ordered, and adjudged that the tax levied and assessed by the defendant against the property of the plaintiff, during the periods that the title to said property was vested in the plaintiff, is valid and collectible. Let the plaintiff pay the cost of this action. F. A. Daniels, Judge Superior Court holding the February Term, 1936."

The only exception and assignment of error is to the judgment as signed.

*L. L. Levinson for plaintiff.*
*W. J. Hooks for defendant.*

CLARKSON, J. The question involved in this controversy is whether or not a county may levy and collect *ad valorem* taxes against real estate owned by a municipality within that county, after title to such real property has been acquired by tax foreclosure and is being used by the municipality for rental purposes? We think so, when the property is not devoted to governmental uses or purposes.

The plaintiff claims the parcels of property (1) acquired by the town of Benson at a foreclosure sale of the tax certificate held by the town of Benson for the nonpayment of tax on the J. C. Warren property. (2) Acquired by the town of Benson at a foreclosure sale of the tax certificate held by the county of Johnston for the nonpayment of the tax on the Benson Creamery Corporation property.

The plaintiff contends that it is exempted, under the Constitution of North Carolina, Art. V, sec. 5. We cannot so hold under the facts of this controversy. The provisions of the Constitution are as follows: "Property belonging to the State, or to municipal corporations, shall be exempt from taxation. The General Assembly may exempt cemeteries and property held for educational, scientific, literary, charitable, or religious purposes; also wearing apparel, arms for muster, household and kitchen furniture, the mechanical and agricultural implements of mechanics and farmers; libraries and scientific instruments, or any other personal property, to a value not exceeding three hundred dollars."

In *Atlantic & N. C. R. R. Co. v. Board of Commissioners of Carteret County,* 75 N. C., 474 (476), it is said: "But where the State steps down from her sovereignty and embarks with individuals in business enterprises, the same considerations do not prevail. . . . At any rate, we do not think the exemption in the Constitution embraces the interest of the State in business enterprises, but applies to the property of the State held for State purposes."

The General Assembly has passed the following act, N. C. Code, 1935 (Michie), sec. 7880 (2): "The following property shall be exempt from taxation under this article: (a) Property passing to or for the use of

the State of North Carolina, or to or for the use of municipal corporations within the State or other political subdivisions thereof, for exclusively public purposes," etc.

We think that the question involved in this controversy was settled in *Board of Financial Control v. Henderson Co.,* 208 N. C., 569 (571-2), where it is said: "So the question in this controversy narrows itself down: Can the city of Asheville, a municipal corporation, acquire business property in another county, hold and rent it, without the payment of taxes in that county? We think not. The property is not held or used for any governmental or necessary public purpose, but for purely business purposes."

In the above case we distinguished the case of *Andrews v. Clay Co.,* 200 N. C., 280, and said at p. 574: "The town of Andrews was operating a municipal electric plant—a public use or purpose. *Fawcett v. Mt. Airy,* 134 N. C., 125. A necessary expense—Const. of N. C., Art. VII, sec. 7; *Webb v. Port Commission,* 205 N. C., 663 (673); *Mfg. Co. v. Aluminum Co.,* 207 N. C., 52 (59). The purpose for which the land was used in the *Andrews case, supra,* being for a public purpose or use, is distinguishable from the present case, where the use was private, for business purposes."

While there is no doubt as to the general principle in this State, the specific question here involved has not been directly decided, but the case of *Village of Watkins Glen v. Hager,* 252 N. Y. S., 146, is directly in point. In that case a tract of land was deeded to the municipality without reservation "to use the same, or the avails therefrom for municipal purposes, and for the use, benefit, and enjoyment of the people of the said village and its successors." . . . The power of the municipality to acquire the land was amply sustained by statutory provision. At the time of the decision in this case, all real property in the State of New York was subject to taxation except as the same was exempted from taxation under the terms of the tax law as follows: "Property of a municipal corporation of the State held for a public use, . . . except the portion of municipal property not within the corporation." It will be noted that the terms of the exemption statute were not as broad as the constitutional exemption in North Carolina, but this Court held in *Atlantic & N. C. R. R. Co. v. Comrs. of Carteret County, supra,* that this was intended to apply only to property devoted to a public use, or to some purpose or function of government. In applying the tax law exemption, the New York Supreme Court relied as one of its authorities upon the North Carolina decision. The county of Schuyler sought to sell the land, and an action was brought to cancel the assessment and levy. The plaintiff contended that the property, having been acquired by the village of Watkins Glen for municipal purposes, was held by it for a public use, and that the same was not subject to taxation. The

defendants contended that the property so held by the plaintiff was not held for a public use or devoted to a public use, and therefore was subject to taxation.

"It is manifest there are two classes of property of municipal corporations exempt from taxation," said the New York Supreme Court. "First is that class of property held for a public use, in that it is used in connection with the operation of the functions of government, such as municipal buildings; second, that class of property held for a public use, in that it is for the benefit of the people for their free use and enjoyment, such as parks, playgrounds, athletic fields, art museums, and public uses of a similar nature.

"When the municipal corporation, however, acquires and holds property without devoting the same to either class of purpose, it is simply held without use. The fact that it is to a certain extent used for the purpose of producing income, when there is no definite plan evolved for its use by or for the public, cannot reasonably be said to constitute holding for a public use. If property is held for a public use, it must be used for the public benefit, devoted to some public purpose, and operated and maintained in the interest of the public health, education, amusement, or other specified statutory purposes. When it is held in practically a private capacity, when no use is made of it for the benefit of the people, when the sole acts of the public authorities in relation to it are to rent small parcels and exclude the public by locked gates, such property is not held for a public use within either the letter or the spirit of the statute exempting the same from taxation."

N. C. Code of 1935 (Michie), sec. 7880 (177), is as follows: "Whenever in any law or act of incorporation, granted either under the general law or by special act, there is any limitation or exemption of taxation, the same is hereby repealed, and all the property and effects of all such corporations, other than the bonds of this State and the United States Government, shall be liable to taxation, except property belonging to the United States and to municipal corporations, and property held for the benefit of churches, religious societies, charitable, educational, literary, or benevolent institutions or orders, and also cemeteries: *Provided,* that no property whatever, held or used for investment, speculation, or rent shall be exempt, other than bonds of the State and the United States Government, unless said rent or the investment in or income from such investment shall be used exclusively for religious, charitable, educational, or benevolent purposes, or the interest upon the bonded indebtedness of said religious, charitable, or benevolent institutions." This section is based on Art. V, sec. 5, of the State Constitution. In fact, portions of the section are verbatim enactments of the provisions of the constitutional article before mentioned. No exemption is per-

mitted except in the specified instances and where such property is *exclusively* devoted to those purposes. *United Brethren v. Comrs.*, 115 N. C., 489; *Davis v. Salisbury,* 161 N. C., 56; *Southern Assembly v. Palmer,* 166 N. C., 75; *Trustees v. Avery County,* 184 N. C., 469; *Salisbury Hospital v. Rowan County,* 205 N. C., 8. See N. C. Code, 1935 (Michie), sec. 7971 (17).

Taxation is the rule and exemption the exception. The rule has repeatedly been laid down by this Court, the exemptions from taxation are to be strictly construed. *United Brethren v. Comrs., supra,* 490; *Salisbury Hosp. v. Rowan County, supra; Rich v. Doughton,* 192 N. C., 604; *Latta v. Jenkins,* 200 N. C., 255; *Stedman v. City of Winston-Salem,* 204 N. C., 203.

It has been specifically held that property acquired by the State through delinquent tax sales is held by the State in its proprietary capacity, and not for governmental purposes, and lands so held are subject to general assessments and other burdens not imposed upon property impressed with a public purpose. *Conley v. Hawley* (Cal.), 39 P. (2d), 408.

Property acquired by a municipal corporation through foreclosure of local improvement assessments and held in trust for holders of improvement bonds has been held not exempt from taxation. *Spokane County v. City of Spokane* (Wash.), 13 P. (2d), 1084.

Even if it be conceded that a liberal construction should be given to tax exemption laws as applied to municipal corporations, it is nevertheless true that property of municipal corporations not intended to be used for corporate purposes is not exempted from taxation. *City of Eugene v. Kenny* (Ore.), 293 P., 924.

There is no evidence in the record of this case indicating that the town of Benson ever had any intention of devoting the lands purchased under tax foreclosure proceedings for a public purpose. The lands were rented, and the town received the rental income. They were held for sale, and the present action was brought because of bidders for the property. The only suggestion of a public purpose or public use is that the purchase of the tracts was necessary to protect the town's tax liens. Having done that, the town held the lands as would any other purchaser, renting the property as a private individual would have done, and now it proposes to sell the lands, as any private individual purchaser might have done. The income from the rents has been applied or could have been applied to paying the taxes due on the lands. To permit the town to buy the lands, and thus exempt them from county taxes, would result in manifest discrimination against the county.

For the reasons given, the judgment of the court below is

Affirmed.

DEVIN, J., dissenting: The Constitution of North Carolina, Art. V, sec. 5, contains these words:

"Property belonging to the State or to municipal corporations shall be exempt from taxation."

Neither the General Assembly nor this Court has power to amend or qualify the clear and unmistakable mandate of the organic law of the State.

The positive language of the constitutional exemption admits of no interpretative distinction contrary to the written words.