IN THE MATTER OF THE APPEAL OF THE UNIVERSITY OF NORTH
    CAROLINA AND THE STATE OF NORTH CAROLINA FROM THE
    LISTING AND ASSESSMENT OF CERTAIN PROPERTIES BY ORANGE
    COUNTY AND THE TOWNS OF CHAPEL HILL AND CARRBORO FOR
    THE YEARS 1969, 1970, 1971, 1972, 1973 AND 1974

No. 67

(Filed 15 July 1980)

Taxation § 21.1— ad valorem taxes—exemption of State property—public purpose
    not required
        Property owned by the State is exempt from ad valorem taxation by Art.
    V, § 2(3) of the N. C. Constitution solely by reason of State ownership, and the
    statute requiring property owned by the State to be held exclusively for a
    public purpose in order to be exempt from taxation, G.S. 105-278.1, is un-
    constitutional. Therefore, the Towns of Chapel Hill and Carrboro and the
    County of Orange may not assess ad valorem taxes against any property
    owned by the University of North Carolina, an agency of the State, regardless
    of the purpose for which the property is held.

THIS case is before us upon petition by all parties to review
judgment entered by *Judge McKinnon* in the Superior Court,
ORANGE County, on 10 July 1979, prior to determination by the
Court of Appeals. The petition was allowed by order of this Court
in Conference on 11 January 1980.

In brief summary the facts pertinent to this litigation are as
follows: Petitioners, the State of North Carolina and the Universi-
ty of North Carolina (UNC), appealed to the North Carolina Prop-
erty Tax Commission (Commission) from an order by the Orange
County Board of Commissioners and the Carrboro and Chapel Hill
governing boards (respondents) requiring listing, valuation, and
taxation of certain property belonging to UNC for the years 1969,
1970, 1971, 1972, 1973 and 1974. The Commission determined that
the property belonging to UNC was subject to ad valorem taxa-
tion unless used for public or governmental purposes as provided
by G.S. 105-278.1. The Commission then determined that all the
properties listed by Orange County, Chapel Hill and Carrboro for
taxation were exempt, except: (1) parcel 86-G-1, the Carolina Inn
and the personal property used in its operations; (2) parcel
86-D-12, 13 and 14, the first floor of the Hill Building; (3) parcel
29-1A, the portion of the airport property leased to the private
airplane maintenance and repair firm and storage space rented to

individual airplane owners. The Commission held that the aforementioned properties were being used for commercial purposes which had no logical relation to the University's educational activities. However, the Commission held these properties were to be taxed for the year 1974 only. From this order all parties petitioned the Superior Court, Orange County, for further review.

In considering the parties' petitions, Judge McKinnon found all of the Commission's findings of fact to be supported by substantial evidence and sustained them. Based on these findings, he adopted the Commission's first four conclusions of law. Judge McKinnon reversed that part of the Commission's conclusion number 5 involving the University's off-campus electric and telephone utilities, and the Horace Williams Airport, as arbitrary and not supported by substantial evidence in the entire record. He therefore made the following conclusions of law: (1) that parcel 86-G-1, the Carolina Inn and the personal property used in its operation, were subject to ad valorem taxation; (2) that parcel 86-D-12, 13 and 14, the first floor of the Hill Building, was subject to ad valoren taxation; and (3) that the off-campus University electric and telephone systems were subject to ad valoren taxation. Judge McKinnon affirmed the Commission's conclusion of law that these properties were subject to taxation only for the year 1974. From this judgment all parties appealed to the Court of Appeals, and we granted discretionary review prior to that court's determination.

*Rufus L. Edmisten, Attorney General, by Myron C. Banks, Special Deputy Attorney General, for the State of North Carolina and the University of North Carolina.*

*Michael B. Brough for the Town of Carrboro.*

*Haywood, Denny and Miller, by Emery B. Denny, Jr. and Michael W. Patrick for the Town of Chapel Hill.*

*Coleman, Bernholz, Dickerson, Bernholz, Gledhill and Hargrave, by Geoffrey E. Gledhill and Alonzo Brown Coleman, Jr. for Orange County.*

BROCK, Justice.

This appeal involves an attempt by the Towns of Chapel Hill and Carrboro and by Orange County to tax certain real and per-

sonal properties owned by the University of North Carolina. As a preface to our discussion of the issues raised by the appeal, we note that the University of North Carolina is a constitutionally created body. It was established by Section 41 of the (1776) North Carolina Constitution, and was incorporated as a body politic with perpetual succession and a common seal, pursuant to the laws of North Carolina. *See* North Carolina Public Laws 1789, c. 305, s. 1.

The first question raised on this appeal, and the only question which will be addressed by this opinion, is whether or not personal and real property belonging to the University of North Carolina can be taxed by the Towns of Chapel Hill and Carrboro and Orange County. UNC claims exemption from taxation by virtue of Article V, Section 2(3) of the North Carolina Constitution which in its pertinent part provides as follows:

"Property belonging to the State, counties and municipal corporations shall be exempt from taxation . . . ."

Chapel Hill, Carrboro and Orange County contend that the property belonging to UNC is subject to ad valorem taxation unless the University property is held exclusively for public purpose as provided by G.S. 105-278.1. For the reasons which follow we hold that the North Carolina Constitution, Article V, Section 2(3), prohibits the Towns of Chapel Hill and Carrboro and Orange County from assessing ad valorem taxes against any property owned by UNC *regardless of the purpose* for which the property is held. We are not unaware of previous decisions of this Court holding that for property owned by the State or a municipality to be exempt from taxation, it must be held for a public or governmental purpose. *See, e.g., Board of Financial Control v. Henderson County,* 208 N.C. 569, 181 S.E. 636 (1935); *Town of Benson v. County of Johnston,* 209 N.C. 751, 185 S.E. 6 (1936); and *Town of Warrenton v. Warren County,* 215 N.C. 342, 2 S.E. 2d 463 (1939). However we note also a divergent line of cases in this State which have held that State ownership alone suffices to bring property within the Constitution's tax exemption for State owned property. *See, e.g., Town of Andrews v. Clay County,* 200 N.C. 280, 156 S.E. 855 (1931); *Town of Weaverville v. Hobbs,* 212 N.C. 684, 194 S.E. 860 (1938). Having now had an opportunity to more fully consider both lines of cases and Article V, Section 2(3) of our Constitution, we have concluded that all property of the University of North

Carolina is tax exempt due solely to its ownership by the State of North Carolina. This conclusion is first supported by a review of the development of the property tax in North Carolina.

In 1868 the North Carolina Constitutional Convention provided for a uniform tax by the State on ". . . all real and personal property, according to its true value in money." North Carolina Constitution (1868) Article V, Section 3. However the Convention also provided that "[p]roperty belonging to the State, or to municipal corporations shall be exempt from taxation. . . ." North Carolina Constitution (1868) Article V, Section 5. Prior to the Constitutional Convention of 1868, the Revenue Acts of North Carolina had consistently exempted "all lands or other property belonging to this State" or "to any county in this State." *See* N.C. Public Laws 1866-67, c. 72, *Exemptions*, s. 8. This exemption of State owned property mandated by our Constitutional Convention in 1868 simply made compulsory the long-standing policy of this State not to tax its own property.[1]

The first authority to tax real property in North Carolina exempted sovereign property and came in 1665 when the Lord's Proprietors authorize:

"Equall taxes and assessments eqyally to rayse moneyes or goods upon all Lands (excepting the lands of us, the Lords Propryators before setling). . . ." [2]

Therefore, upon tracing the history of the property tax in North Carolina, it is clear that from the inception of such a tax, property belonging first to the sovereign and then to the State was automatically exempted from taxation. The State's ownership alone provided tax exemption. Not until 1885, nearly 20 years after the adoption of Article V, Section 5 of the 1868 North Carolina Constitution, did the Legislature narrow its interpretation of this exemption to include only State owned property held for "public purposes." N.C. Pub. Laws 1885, c. 177, s. 16(1). *See also*, A. Coates, *supra*, at 168. This legislative "public purpose" gloss on the North Carolina Constitution is presently contained in G.S. 105-278.1.

1. A. Coates, *The Battle of Exemptions*, 19 N.C. Law Rev. 154 (1941).

2. Thorpe, *American Charters, Constitutions and Organic Laws*, 2758 (1909).

Preceding our Legislature's restrictive interpretation of Article V, Section 5 of the 1868 North Carolina Constitution, (*hereinafter* Article V, Section 2(3) (1969) North Carolina Constitution), was the decision of this Court in *Atlantic and N.C.R.R. Co. v. Commssioners of Carteret Co.*, 75 N.C. 474 (1876). The facts of that oft-cited case are as follows: The State of North Carolina owned ²/₃ of the Atlantic and North Carolina Railroad's capital stock. Despite the State's stock ownership, Carteret County levied an ad valorem property tax upon all of the Railroad's real and personal property. The Railroad contended that ²/₃ of its property was tax exempt by virtue of the constitutional exemption for State-owned property. In ruling that the State's stock holdings did not exempt the Railroad's property from taxation, this Court held:

"Although this language [granting State property a tax exemption] is general, yet we do not think it was intended to embrace this case. . . .

[W]e do not think the exemption in the Constitution embraces the *interest* of the State in business enterprises, but applies to the property of the State held for *State purposes.*" *Id.* at 476. (Emphasis added.)

Upon examination of the facts in *Atlantic and N.C.R.R. Co. v. Commissioners*, it is important to note that none of the taxed property *belonged* to the State of North Carolina entitling it to any exemption from taxation. Even though the State held a controlling interest in the Railroad Company's common stock, the property, both real and personal, belonged to Atlantic and N.C.R.R. Co. and was therefore properly subjected to ad valorem taxation.

The case of *Atlantic and N.C.R.R. Co. v. Commissioners*, was correctly decided on its facts, since the property which was taxed was owned *not* by the State but by the Railroad. The Court was correct in its narrow holding that merely because the State maintained a stock interest in the Company, the *Company's property* was not exempt from taxation. The distinction drawn by *Atlantic and N.C.R.R. Co. v. Commissioners* was between the State's ownership of property and the State's ownership of stock in a corporation. The former entitles the property to tax exemption, the latter does not. However since *Atlantic and N.C.R.R. Co. v. Com-*

*missioners,* both our Legislature and this Court have on numerous occasions misapplied the holding in that case as mandating a "public purpose" requirement for the exemption of State owned property under the North Carolina Constitution. Two lines of cases developed after *Atlantic and N.C.R.R. Co. v. Commissioners.* The following discussion shows the development of the "public purpose" doctrine by this Court through its misplaced reliance on *Atlantic and N.C.R.R. Co. v. Commissioners.*

In *Board of Financial Control v. Henderson County,* 208 N.C. 569, 181 S.E. 636 (1935), plaintiff, a State agency, owned property in Henderson County which it rented to various private businesses as a commercial undertaking. Henderson County levied property taxes against the agency's property. The agency attempted to sell the property without paying these taxes, claiming exemption from tax pursuant to the North Carolina Constitution. In holding the State agency fiscally responsible for the taxes on the property, Justice Clarkson writing for the Court noted:

"that the Atlantic and N.C.R.R. Co. case, *supra,* decides that under the Constitution of North Carolina, the property is taxable unless devoted to a public use." *Id.* at 573.

Following *Board of Financial Control v. Henderson County,* this Court decided *Town of Benson v. County of Johnston,* 209 N.C. 751, 185 S.E. 6 (1936). In that case, the Town of Benson, a municipality, had acquired certain property within its corporate limits by tax foreclosure. After acquiring the property in fee simple, the Town of Benson rented the property solely for commercial purposes. Johnston County levied an ad valorem tax against the property which the Town of Benson refused to pay. This Court held the municipally owned property subject to ad valorem taxation, citing *Village of Watkins Glen v. Hager,* 252 N.Y.S. 146 as "directly in point." Since under the taxing statutes of New York, the only property exempted from ad valorem tax was "[p]roperty of a municipal corporation of the State *held for a public use* . . . ", (emphasis ours), Village of Watkins Glen should not be considered as authority for interpretation of our Constitution. The language of North Carolina's constitutional exemption contains no comparable public use requirement for tax exemption of State or municipally owned property. Again Justice Clarkson, writing for the Court, was not unaware that the "terms of the

[N.Y.] exemption statute were not as broad as the constitutional exemption in North Carolina"; however, relying directly on its previous holding in *Atlantic and N.C.R.R Co. v. Commissioners*, the Court held the North Carolina Constitution did not exempt State or municipally owned property unless it was "devoted to a public use or to some purpose or function of government." *Id.* at 755, 185 S.E. at 9.

Three years later this Court decided the case of *Warrenton v. Warren County*, 215 N.C. 342, 2 S.E. 2d 463 (1939). The facts of that case are as follows: At foreclosure sale, the Town of Warrenton acquired and held in fee simple the Warrenton Hotel. In order to protect its prior investment in the bankrupt hotel corporation, the Town rented the hotel for $200.00 per month plus a small percentage of the room rentals. Warren County levied ad valorem tax on the hotel property which the Town of Warrenton refused to pay. The Court ruled that "[t]his case is governed by *Railroad v. Commissioners*, 75 N.C. 474; *Board of Financial Control v. Henderson County*, 208 N.C. 569; and *Benson v. Johnston County*, 209 N.C. 751. . . . The words 'Property belonging to the State or to municipal corporations, shall be exempt from taxation,' . . . have been interpreted in this jurisdiction since 1876 as meaning property used for governmental or public purposes. . . ." *Id.* at 344, 345, 2 S.E. 2d at 464. Chief Justice Stacy concurring in *Warrenton v. Warren County* noted that no public use requirement could be found in the constitutional exemption for State or municipally owned property. However, based on this Court's prior interpretation in *Atlantic and N.C.R.R. Co. v. Commissioners* and subsequent legislative action (citing N.C. Pub. Laws 1937, c. 291, s. 600) he concluded that "it will be *implied* that the intention was to exempt such [State or municipally owned] property only when devoted to a public purpose." (Emphasis added.) *Id.* at 346, 2 S.E. 2d at 465.[3]

In 1940, the year following *Warrenton v. Warren County*, the Court decided *Winston-Salem v. Forsyth County*, 217 N.C. 704, 9 S.E. 2d 381 (1940). In an opinion written by Chief Justice Stacy,

---

3. Chief Justice Stacy's concurring opinion was joined by Justices Barnhill and Winborne, with Justice Clarkson concurring, agreeing with Chief Justice Stacy, in a separate opinion. Justices Devin and Seawell dissented in separate opinions. The majority opinion, written by Justice Schenck was not joined in its entirety by any other justice.

the Court refused to exempt from taxation certain lots owned by the City of Winston-Salem and held by the City for resale. The Court ruled the lots were not held for a "public purpose" and therefore were subject to taxation, relying directly on *Benson v. Johnston County* and *Warrenton v. Warren County.*

The above cases indicate a direct reliance by this Court on the decision in *Atlantic and N.C.R.R. Co. v. Commissioners.* Our present analysis of *Atlantic and N.C.R.R. Co. v. Commissioners* clearly points out that when read in its factual context, that case should not be relied on as precedent for a "public purpose" requirement before State owned property is tax exempt. Therefore, since the foundation for the reasoning underlying this line of early cases is factually incorrect, their holdings requiring a "public purpose" before property belonging to the State will be exempted from taxation must also be considered not in keeping with the rationale expressed herein and in opinions of this Court, discussed below.

As previously noted the decisions of this Court have created a second line of authority developing nearly simultaneously with the cases just discussed. These cases hold that State or municipal ownership alone bring property within the constitutional exemption from ad valorem taxation. A discussion of this line of authority follows.

In *Town of Andrews v. Clay County,* 200 N.C. 280, 156 S.E. 855 (1931), this Court in holding property owned by the Town of Andrews, a municipal corporation, per se exempt from taxation by Clay County, noted:

"The provision in the first clause of Section 5, of Article V, of the Constitution of North Carolina [*see* Article V, Section 2(3) (1969) North Carolina Constitution] by which property belonging to or owned by a municipal corporation is exempt from taxation, *is self-executing, and by its own force without the aid of legislation, exempts such property from taxation . . .* [by the State or county in which it is located] *because of its ownership, without regard to the purpose for which such property was acquired and held by the corporation. . . .* The language of the constitutional provision is so clear and unambiguous that there is no room for judicial construction." (Em-

phasis added.) *Id.* at 282, 156 S.E. at 856. *See also Latta v. Jenkins*, 200 N.C. 255, 258, 156 S.E. 857, 858 (1931).

This construction of North Carolina's constitutional exemption for State and municipally owned property was also applied in the case of *Weaverville v. Hobbs*, 212 N.C. 684, 194 S.E. 860 (1938). In *Weaverville* the State of North Carolina obtained title to property located in the Town of Weaverville through foreclosure of a loan by the North Carolina World War Veterans' Loan Fund. This Fund was created by Legislative Act to assist world war veterans in purchasing homes, and upon non-payment by the mortgagor and foreclosure by the Veterans' Loan Fund, title to the foreclosed property passed to the State. Upon acquisition of the property, North Carolina paid all property taxes for the period which the former owners had held the property. However, following acquisition by the State, the property was no longer listed for tax assessment. The State contended its property was constitutionally exempt from taxation by Buncombe County and the Town of Weaverville. Suit was instigated by the Town of Weaverville against Hobbs, the Director of the Veterans' Loan Fund, in an attempt to collect the past due property taxes. This Court concluded that the property was exempt from taxation relying directly on language taken from *Andrews v. Clay County*, and therefore held the property was exempt under our Constitution, " 'because of its ownership, and without regard to the purpose for which the property was acquired and held' . . . ." 212 N.C. at 687, 194 S.E. at 862.

In *Town of Andrews v. Clay County* and *Weaverville v. Hobbs* this Court did not regard the particular purpose for which the property was held to be determinative. The opinions based their holdings, exempting State and municipally owned property from taxation, squarely on the express language found in Article V of our Constitution. Justice Seawell dissenting in *Warrenton v. Warren County*, 215 N.C. 342, 2 S.E. 2d 463 (1939), *supra*, made the following observation:

"It may be good policy to limit tax exemptions to property used for governmental and public purposes only. A number of states have thought so and such restrictions have been clearly expressed in their constitutions. . . . Naturally, I do not object to that mode of expressing and enforcing the

popular feeling upon the subject, but I insist that this Court has no right to engraft such a policy upon the present Constitution which speaks otherwise . . . .

'A written Constitution, framed by men chosen for the work by reason of their peculiar fitness . . . implies a degree of deliberation and a carefulness of expression proportioned to the importance of the transaction, and the words are presumed to have been used with the greatest possible discrimination.' *People v. New York Central Railroad Co.*, 24 N.Y. 485, 487." 215 N.C. at 356, 364, 2 S.E. 2d at 471, 476-77.

As this opinion has previously noted, Article V, Section 2(3) of our Constitution provides that "[p]roperty belonging to the State, counties and municipal corporations shall be exempt from taxation. . . ." This plain language chosen by the framers of our Constitution remains in our present Constitution, as rewritten in 1970, and continues to expressly exempt property belonging to the State from all taxation. It places no requirement, other than ownership, upon State property to entitle it to this exemption. Since our Constitution prescribes State ownership as the sole criteria for tax exemption, the property belonging to the University of North Carolina, an agency of the State of North Carolina, must therefore be tax exempt. This exemption follows by virtue of the property's ownership and occurs irrespective of the purposes for which the property is held. We therefore expressly overrule the first line of cases discussed in this opinion which require State owned property be held for a "public purpose" before it is tax exempt. We adopt this Court's rationale as expressed in *Town of Andrews v. Clay County, supra,* and *Weaverville v. Hobbs, supra,* and hold that under our Constitution State ownership alone exempts property from taxation. In *Sutton v. Phillips,* 116 N.C. 502, 504, 21 S.E. 968 (1895), this Court noted:

"While the courts have the power, and it is their duty in proper cases to declare an act of the legislature unconstitutional it is a well recognized principle that the court will not declare that . . . [a] coordinate branch of the government has exceeded the powers vested in it unless it is plainly and clearly the case."

In the case at bar we hold that our Legislature clearly exceeded its authority in statutorily placing a public purpose requirement

upon State owned property before exempting it from taxation. As previously noted, Article V, Section 2(3) of the Constitution of North Carolina sets out State ownership as the *sole test* for State owned property's exemption from tax. Therefore, G.S. 105-278.1 which requires that State owned property be held exclusively for public purpose before it is tax exempt must be considered ineffective because it is in direct conflict with the plain language of our Constitution. *State v. Williams*, 209 N.C. 57, 182 S.E. 711 (1935); *Railroad v. Cherokee County*, 177 N.C. 86, 97 S.E. 758 (1919); *Nash v. Tarboro*, 227 N.C. 283, 42 S.E. 2d 209 (1947); *see also* 16 Am. Jur. 2d, *Constitutional Law*, § 81 (1979). We recognize that the action of the Legislature in statutorily providing for tax exemption only when State owned property "is used wholly and exclusively for public purposes" was originally prompted by this Court's opinion in *Atlantic and N.C.R.R. Co. v. Comm. of Carteret Co.*, 75 N.C. 474 (1876), *supra*, and has been perpetuated by other decisions of this Court. However, having now concluded that the holdings in *Atlantic and N.C.R.R. v. Comm.*, and other cases relying upon it, inappropriately required a public purpose use before exempting State owned property from taxation, we must also conclude that such a public purpose use imposed by statute is violative of our Constitution.

We note with interest, that courts in other jurisdictions with nearly identical constitutional tax exemptions for property belonging to the State and municipalities have also concluded that State or municipal ownership alone entitles property to a tax exemption. The California Constitution, Article XIII, Section 1, provides in part as follows:

> "property . . . such as may belong to this State, or to any county, city and county, or municipal corporation within this State, shall be exempt from taxation. . . ."

In 1915 the District Court of Appeal for the Third District of California interpreted this constitutional provision when the County of San Francisco attempted to tax certain properties located in the County, but owned by the City of San Francisco. The City claimed the properties exempt under the Constitution, but the County argued the properties were not used for governmental or public purpose and therefore did not qualify for exemption. The California Court held:

"The condition here seems only to be that it (the property) shall 'belong' . . . to the United States, etc. Its location or use is not made a condition of its exemption. The word 'belong' is applied alike and with the same force and meaning to the United States, this state and to counties and municipalities and . . . denote[s] an unqualified ownership of the property, not an ownership of the property, subject to the condition that it was to be used exclusively for governmental purposes." *City and County of San Francisco v. McGovern*, 28 Cal. App. 491, 500, 152 P. 980, 984 (1915).

New Mexico, whose constitutional exemption for State owned property is strikingly similar to our own, has also adopted ownership as the only requirement for tax exemption. In *Church of the Holy Faith, Inc. v. State Tax Commission*, 39 N.M. 403, 409-10, 48 P. 2d 777, 781 (1935), the Supreme Court of New Mexico noted:

"The constitutional provision before us reads: 'the property of the United States, the State and all counties, towns, cities, and school districts and other municipal corporations . . . shall be exempt from taxation.' Art. 8, § 3 [Constitution of New Mexico]. Here ownership seems plainly the sole test.

\*   \*   \*

There would seem to be a logic in making ownership the test as to exemptions of property of the United States, the State and all counties, towns, cities and school districts and other municipal corporations. . . For the State to tax its own property would simply be taking money out of one pocket and putting it in another."

The Supreme Court of Nebraska has also held ownership by a municipality to be the sole criteria for property to come within Nebraska's constitutional provision for exclusion of State and municipal property from taxation. In *Platte Valley P.P. & I. District v. Lincoln County*, 144 Neb. 584, 587, 14 N.W. 2d 202, 204, 155 A.L.R. 412, 416 (1944), that court held:

"Under the provisions of Section 2, Article VIII of the [Nebraska] Constitution, as amended in 1920, which reads in part as follows: 'The property of the State and its governmental subdivisions shall be exempt from taxation' . . . ,

*ownership* and not *use* of the property is the basis of exemption."

The court found that the language of the constitution was clear, and was not subject to interpretation· "until the people of the State change the Constitution to make the use [of property] rather than the ownership the basis of exemption . . . ." *Id.* at 587, 14 N.W. 2d at 204, 155 A.L.R. at 416.[4]

The decisions of these jurisdictions represent the better reasoned and the general rule that "where property owned by the State or its governmental subdivisions is exempted from taxation by express and unqualified constitutional or statutory provision, . . . no tax can be levied against the property of the State or such subdivision, regardless of whether it [the property] is used in a governmental or proprietary capacity." Annot., 155 A.L.R. 423, 424 (1945).

The Towns of Chapel Hill and Carrboro and Orange County argue that *Redevelopment Commission v. Guilford County*, 274 N.C. 585, 164 S.E. 2d 476 (1968) controls the case at bar and requires State or municipal property be used for a governmental or public purpose before it is tax exempt. We disagree. In *Redevelopment Commission*, plaintiff, a municipal corporation, instituted an action to prohibit the collection of ad valorem taxes upon certain real property held by it. Following the Rules of Civil Procedure in effect at the time, each defendant demurred to plaintiff's complaint. The trial court sustained the demurrers, ruling plaintiff's properties were not as a matter of law exempt from Taxation. The Court of Appeals in an opinion reported at 1 N.C. App. 512, 162 S.E. 2d 108 (1968) reversed, holding plaintiff's income-producing property was subject to tax, while its non-income-producing property was exempt. On discretionary review of the Court of Appeals' opinion, this Court held that plaintiff had alleged sufficient facts from which it might be reasonably inferred that *all plaintiff's property was held primarily for a public or governmental purpose*. The fact that income was incidentally derived from the property did not destroy its public use status. Therefore this Court held that both defendants' demurrers, first

---

4. For a compilation of other jurisdictions following this line of reasoning *see* Annot., 3 A.L.R. 1439; supplemented in Annot., 101 A.L.R. 787; Annot., 129 A.L.R. 480, and cases cited therein.

as to the non-income-producing property, as well as to the income-producing property should have been overruled. Since the decision in *Redevelopment Commission* was based on the premise that all of the Commission's property was held for public or governmental purposes, it was not necessary for this Court to reach the question as to whether or not the Commission's property would have been constitutionally tax exempt if *not* held for such purposes. Therefore the opinion's review of the prior cases interpreting our constitutional exemption for State and municipally owned property, and the court's conclusion that allowing the exemption only for property used for public or governmental purposes was a correct constitutional interpretation, must be characterized as obiter dictum. Since the Court determined that the Commission alleged sufficient facts from which it could be inferred that all the Commission's property was held for a public purpose, the Court's discussion of the public purpose requirement for the tax exemption of State and municipally owned property was dictum, as this question of constitutional interpretation was not actually presented nor was it involved in determining the case. As obiter dictum it does not constitute precedent controlling our determination of this appeal. *Cemetery, Inc. v. Rockingham County*, 273 N.C. 467, 160 S.E. 2d 293 (1968); *Hayes v. Wilmington*, 243 N.C. 525, 91 S.E. 2d 673 (1956); *see also* 20 Am. Jur. 2d, *Courts*, § 190 (1965) and cases cited therein.

Orange County, Chapel Hill and Carrboro also argue that taxation of the University's property is necessary; first out of a "sense of fair play and . . . concern for equity between similarly situated taxpayers," and secondly to prevent UNC from obtaining an unfair competitive advantage over the Chapel Hill area's private businesses. We disagree with both contentions. We note first that property owned by the University of North Carolina and property owned by private taxpayers is in no way similarly situated. The University is an agency of the State of North Carolina; thus property owned by UNC is in effect owned by the State. Orange County, Chapel Hill and Carrboro are governmental entities organized pursuant to the laws of the State of North Carolina. G.S. 160A-1; G.S. 153A-10 and 11. To allow Orange County, Chapel Hill and Carrboro to tax University property would be to allow entities created by the State to tax their creator. Such a

tax would be in no way comparable to the local governing body's tax on privately owned property.

Secondly, with regard to the contention that UNC's tax free status provides the University with an unfair competitive advantage over private enterprise, we note the case of *Mitchell v. Financing Authority*, 273 N.C. 137, 156, 159 S.E. 2d 745, 758 (1968). In that case Justice Sharp (later Chief Justice), writing for the Court, stated:

> "The rule in North Carolina is that it is not the function of government to engage in private business."

This rule is codified in North Carolina General Statute 66-58 which specifically prohibits (with certain exceptions) the State of North Carolina or any agency thereof from rendering services or selling goods ordinarily and customarily rendered by *private enterprise*. However, Orange County, Chapel Hill and Carrboro, governmental units created by the State, have no duty or authority to attempt to enforce the provisions of this statute by ad valorem taxation of State property. It is also apparent that if the State chose to compete with private enterprise, ad valorem taxes levied by the State's political subdivisions would not in themselves deter the State from competition nor significantly undercut the State's competitive advantage over private enterprise. Finally, absent constitutional authorization, we can find no logic to justify taxation of State property by local entities created by the State. The authority of these local entities to levy taxes is derived from the State which they now seek to tax. Truly this is an effort by the local entities to bite the hand which nurtured and fed them.

Based on the language of Article V, Section 2(3) of our Constitution, which exempts State owned property from taxation without qualification, we adopt as the law of this jurisdiction the majority rule in States which have by constitution, as does North Carolina, unqualified tax exemption for State-owned property. That is: State owned property is exempt from ad valorem taxation solely by reason of State ownership, regardless of the property's use.

The judgment of the Superior Court is reversed and this cause is remanded to the Superior Court, Orange County, for entry of judgment in conformity with this opinion.

Reversed and remanded.