THE ATLANTIC & N. C. R. R. CO. *v.* THE BOARD OF COMMIS-
SIONERS OF CARTERET COUNTY.

So much of section 11, sub-sec. 3, chap. 184, of the Laws of 1874–'75,
as provides that railroad beds listed for taxation, "shall not be valued
at less than $8,000 per mile," without regard to its real value, is in con_
flict with the Constitution, and therefore void.

The provision contained in sec. 6, Art. V, of the Constitution, exempting
property belonging to the State from taxation, does not embrace the in-
terest of the State in business enterprises, such as railroads and the like,
but applies to the property of the State held for State purposes.

This was a CIVIL ACTION. Application for an *Injunction*,
heard before his Honor Judge SEYMOUR, at February Term,
1876, of CARTERET Superior Court.

Application was made to his Honor, on the 12th Novem-
ber, 1875, for a restraining order against the collection of
certain taxes; which order his Honor granted, upon the
plaintiff's giving bond, &c., at the same time giving notice
to the defendant to appear at the next Superior Court of
Carteret, and show cause why the injunction should not be
continued until the hearing.

The defendant at the said term (February Term, 1876),
by way of showing cause, urged that the tax levied on plain-
tiff's property was not exorbitant or excessive, and that the
State of North Carolina, although a stockholder to the
amount of two-thirds of the stock of the plaintiff company,
stood on a footing with the private stockholders in said
company, and that being so, the State's interest in the com-
pany's road and other property was not exempt from taxa-
tion. The company plaintiff, on the other hand, contended
that the interest of the State in said road was exempt from
taxation, under sec. 6, Art. VII of the Constitution, and that
the tax levied and sought to be collected by the defendant
was unconstitutional and void.

At the same Term the plaintiff moved for a perpetual injunction against the defendant's collecting said tax, which motion the Court, being of opinion with the defendant, overruled.

From the judgment of the Court, refusing to grant an injunction, the plaintiff appealed.

The grounds of the plaintiff's application for a restraining order, and other facts pertinent to the points decided in this Court, are stated in the opinion of Justice READE.

*Hubbard* and *Clarke & Son*, for appellant.
*Smith & Strong*, contra.

READE, J.   1. The Constitution, Art. V, sec. 3, provides that all property, real and personal, shall be taxed by a " uniform rule," according to its " true value in money."

The Statute (1874–'75, chap. CLXXXIV, sec. 11, sub-sec. 3) provides that railroad beds shall be given in in the counties where they lie, and that they shall not be valued at less than $8,000 per mile.

Now, if the Legislature were to enact that every man's land shall be valued at eight dollars per acre, without regard to its *real* value, *its* conflict with the Constitution would be manifest.   And so if it provided that no man's land should be valued at less than eight dollars per acre, although it be worth much less.

We have to declare, therefore, that the aforesaid statute under which the defendants made the valuation of the road bed, as we infer from their letter to the plaintiff, is unconstitutional.

2. The State owns two-thirds of the capital stock of the road, and yet the defendants valued the road as if the State had no property in it.

The plaintiff complains of this, because the Constitution,

Art. V, sec. 6, provides that : " Property belonging to the State shall be exempt from taxation."

Although this language is general, yet we do not think it was intended to embrace this case. The Capitol is not taxed because the State would be paying out money just to receive it back again, less the expenses of handling it. And if taxed for local purposes it would to that extent embarrass the State government.

Nor is it any hardship upon the locality to have the property exempt, as the advantages from it are supposed to compensate for the exemption. And, as with the Capitol, so with other State property.

But where the State steps down from her sovereignty and embarks with individuals in business enterprises, the same considerations do not prevail. The State does not engage in such enterprises for the benefit of the State as a State, but for the benefit of individuals or communities—at least this is generally so—and if the State gets no taxes she may get nothing. Suppose, for illustration, that the plaintiff should declare no dividends and consume the whole earnings in current expenses. In that case the State as a State would never derive anything from the road except the taxes.

At any rate, we do not think the exemption in the Constitution embraces the interest of the State in business enterprises, but applies to the property of the State held for State purposes.

There is error. This will be certified to the end that the property may be valued upon the basis of this opinion, and that such valuation may be collected and the excess, if any, restrained.

PER CURIAM.                    Judgment accordingly.