BOARD OF FINANCIAL CONTROL OF BUNCOMBE COUNTY v. THE COUNTY OF HENDERSON.

(Filed 9 October, 1935.)

**Taxation B d—Property of municipality lying outside the county and used for business purpose is taxable by county in which it is situate.**

The Board of Financial Control of Buncombe County obtained title to property situate in another county in liquidating assets belonging to a city within the county, the property being a part of the collateral security given the city for its deposit in a bank which failed. The property was rented by the Board of Financial Control to private businesses, and later the board obtained a prospective purchaser. *Held:* The property was subject to taxation by the county in which the property is situate although owned by a municipal corporation, since the property was held by the municipal corporation purely for business purposes and not for any governmental or necessary public purpose. N. C. Const., Art. V, sec. 5; N. C. Code, 7880 (2).

APPEAL by defendant from *Harding, J.,* at August Term, 1935, of HENDERSON. Reversed.

This is a controversy without action. The agreed statement of facts is as follows:

"1. The Board of Financial Control of Buncombe County, North Carolina, is a municipal corporation, created by the Legislature of North Carolina, and its duties and privileges are set out in chapter 253 of the Public-Local Laws of 1931, and as amended in chapter 189 of the Public-Local Laws of 1933, and as amended by chapter ...... of the Public-Local Laws of 1935, and under authority of these acts is the owner of, and is liquidating all of the properties, both real and personal, which were received by the city of Asheville and county of Buncombe as collateral security for their deposits in the Central Bank and Trust

Company of Asheville and certain other banks. The county of Henderson is a body politic under the statutes of North Carolina.

"2. The Board of Financial Control so created obtained title by conveyance dated 13 November, 1931, and is now the lawful owner in fee simple of the following described property:

"All that certain piece, parcel, or lot of land situate, lying, and being in the city of Hendersonville, at the northwest intersection of Main Street and Fourth Avenue, and more particularly described as follows:

"Beginning at a point in the western margin of Main Street, said point being located where the said margin of Main Street intersects the Northern margin of Fourth Avenue, and runs thence with the said margin of Main Street, north 10 deg. west 45.8 feet to a point at the extreme northeast corner of the building now occupied by the First Bank and Trust Company, and runs thence with the northern face of the wall of said building, south 80 deg. west 130 feet to a point in the eastern margin of a 20-foot alley, now known as Jackson Street; runs thence with the eastern margin of said Jackson Street, south 10 deg. east 45.8 feet to a point where the said Jackson Street intersects the northern margin of Fourth Avenue; thence along and with the northern margin of Fourth Avenue, north 80 deg. east 130 feet to the point of beginning. Being all that property conveyed to the First Bank and Trust Company by Adolf Ficker and wife, by deed dated 16 July, 1919, and recorded in Deed Book No. 102, at page 245, in the office of the register of deeds for Henderson County, North Carolina.

"3. The Board of Financial Control has received from W. B. Hodges and his associates of Hendersonville a *bona fide* offer to purchase the said property at a price agreed upon but requiring title in fee simple, free and clear of all liens and taxes. There are no liens nor claims against said property other than the taxes claimed by the county of Henderson for the years 1935, 1934, 1933, and 1932.

"4. Under their duly constituted authority the Board of County Commissioners of Henderson County have assessed said property for taxation for the aforesaid years, and have levied a tax against same which the plaintiff has refused and still refuses to pay; and the tax collector of Henderson County has advertised said property to be sold for taxes for the aforesaid years. The proposed purchasers have refused to accept title while this claim of tax lien stands against the property. The plaintiff, for and in behalf of the county of Buncombe and city of Asheville, denies that the county of Henderson is permitted to tax said property for the years hereinabove set forth, and, therefore, refuses to pay the same.

"5. Since plaintiff acquired the property described in paragraph 2, it has been renting and is now renting said property as an office building to various persons and corporations, who operate private businesses.

"Wherefore, the parties hereto have agreed upon the foregoing facts, and respectfully urge a speedy determination of the matter of law involved in this transaction. The matter in controversy being whether or not such taxes may be assessed as a lien against the said property for and during the period title to same is vested in said Board of Financial Control.

"Witness the signature of counsel representing both parties, this ...... August, 1935. J. H. Sample, Attorney for the Board of Financial Control of Buncombe. M. M. Redden, Attorney for the County of Henderson."

The judgment of the court below, rendered on the agreed statement of facts, was to the effect that the tax on the land assessed by defendant was invalid. To the judgment as rendered the defendant excepted, assigned error, and appealed to the Supreme Court.

*J. Y. Jordan, Jr., and J. H. Sample for plaintiff.*
*Redden & Redden for defendant.*

CLARKSON, J. The city of Asheville had certain collateral notes to protect its deposits in the Central Bank and Trust Company of Asheville when the bank broke. To collect and settle the many matters in which Asheville and Buncombe County were interested in, from the failure of this and other banks, the General Assembly set up the Board of Financial Control of Buncombe County, the plaintiff in this action.

Under this set-up the plaintiff acquired an office building in Hendersonville, Henderson County, N. C., by conveyance, on 13 November, 1931, and since that time has rented it as an office building to various persons and corporations who operate private businesses. There are certain taxes assessed against said property by Henderson County for the years 1932, 1933, 1934, and 1935. The plaintiff has contracted to sell the land in controversy, but the purchaser requires a title in fee simple, free and clear of all taxes.

The question involved: Is the real property, owned by the Board of Financial Control of Buncombe County, created by chapter 253 of the Public-Local Laws of 1931, exempt from the payment of *ad valorem* tax? We think not.

In *Bourne v. Board of Financial Control of Buncombe County,* 207 N. C., 170, this Court held that the Board of Financial Control for Buncombe County is a corporation with certain enumerated powers and in effect that said board was the collecting or liquidating agent of the city of Asheville and county of Buncombe.

So the question in this controversy narrows itself down: Can the city of Asheville, a municipal corporation, acquire business property in another county, hold and rent it, without the payment of taxes in that

county? We think not. The property is not held or used for any governmental or necessary public purpose, but for purely business purposes.

If a municipal corporation can go into a rental business and escape taxation, it would have a special privilege not accorded to others who are in a like business. The Constitution of North Carolina, Art. V, sec. 5, is as follows: "Property belonging to the State, or to municipal corporations, shall be exempt from taxation. The General Assembly may exempt cemeteries and property held for educational, scientific, literary, charitable, or religious purposes; also wearing apparel, arms for muster, household and kitchen furniture, the mechanical and agricultural implements of mechanics and farmers; libraries and scientific instruments, or any other personal property, to a value not exceeding three hundred dollars."

N. C. Code, 1931 (Michie), sec. 7880 (2), is as follows: "The following property shall be exempt from taxation under this article: (a) Property passing to or for the use of the State of North Carolina, or to or for the use of municipal corporations within the State or other political subdivisions thereof, for exclusively public purposes," etc.

In 3 A. L. R., pp. 1441-2, is the following: "However, in at least one jurisdiction it has been held that although the Constitution or statute in express terms exempts state or municipally owned property from taxation, it will be implied that the intention was to exempt such property only when devoted to a public use. *Atlantic & N. C. R. Co. v. Carteret County* (1876), 75 N. C., 474, wherein it appeared that a tax was levied on the interest of the State in a railroad. Holding that the constitutional exemption did not apply to property of the State held for business purposes, the Court said: 'Although this language is general, yet we do not think it was intended to embrace this case. The Capitol is not taxed, because the State would be paying out money just to receive it back again, less the expense of handling it. And if taxed for local purposes it would to that extent embarrass the State government. Nor is it any hardship upon the locality to have the property exempt, as the advantages from it are supposed to compensate for the exemption. And, as with the Capitol, so with other property. But where the State steps down from her sovereignty and embarks with individuals in business enterprises, the same considerations do not prevail. The State does not engage in such enterprises for the benefit of the State as a State, but for the benefit of individuals or communities—at least, this is generally so— and if the State gets no taxes she may get nothing. Suppose, for illustration, that the plaintiff should declare no dividends and consume the whole earnings in current expenses. In that case the State, as a State, would never derive anything from the road except the taxes. At any rate, we do not think the exemption in the Constitution embraces the

interest of the State in business enterprises, but applies to the property of the State held for State purposes.' "

In the case of *Village of Watkins Glen v. Hager, County Treasurer,* 252 N. Y., pp. 146-7, Supplement, it was held: "That property acquired by municipality is used to produce income without definite plan for use for public held not to constitute 'holding for public use,' exempting property from taxation (Tax Law, sec. 4, subd. 3)." At page 151 is the following: "It has been held in many cases in other jurisdictions that the exemption is limited to property actually devoted to a public use, or to some purpose or function of government. *Town of Hamden v. City of New Haven,* 91 Conn., 589, 101 A., 11, 3 A. L. R., 1435; *Traverse City v. East Bay Township,* 190 Mich., 327, 157 N. W., 85; *Essex County v. Salem,* 153 Mass., 141, 26 N. E., 431; *Atlantic & N. C. R. Co. v. Board of Comrs. of Carteret County,* 75 N. C., 474." It will be noted that *Atlantic & N. C. R. Co. case* is cited.

In *Collector of Taxes of Milton v. City of Boston,* 180 N. E. Rep., 116 (Mass.), at p. 117, is the following *(Rugg, C. J.)* : "The exemption from taxation, in view of the principle on which it rests, cannot justly be extended to property owned by one municipality within the bounds of another, not actually devoted to a public use or held with the design within a reasonable time to devote it to such use. *Essex County v. Salem,* 153 Mass., 141, 26 N. E., 431; *Burr v. Boston,* 208 Mass., 537, 540, 95 N. E., 208, 34 L. R. A. (N. S.), 143." *Lewis v. N. Y. & N. E. R. Co.,* 26 N. E. Rep., 431.

It will be noted that the *Atlantic & N. C. R. Co. case, supra,* decides that under the Constitution of North Carolina, the property is taxable unless devoted to a public use. The North Carolina statute, section 7880 (2), *supra,* says "for exclusively public purposes."

In *Andrews v. Clay Co.,* 200 N. C., 280, the facts were that the town of Andrews was a municipal corporation. The facts, pp. 280-1: "The said land was owned and used by the plaintiff during said years as the site of a power plant for the generation of electricity, which was transmitted over wires from said power plant in Clay County to the town of Andrews in Cherokee County, and there used by said town of Andrews for lighting its streets and municipal buildings, and for distribution among the citizens of said town for domestic and commercial purposes. The revenue derived from the distribution and sale of electricity to citizens of said town was used to pay the expenses of maintaining and operating its electric light and power plant. The town of Andrews purchased the land in Clay County and constructed its power plant thereon under the authority of an act of the General Assembly of this State. It paid for said land and for the construction of said power plant out of funds raised by the issuance and sale of its municipal

bonds." In the above case the assessment made by Clay County was held invalid.

The town of Andrews was operating a municipal electric plant—a public use or purpose. *Fawcett v. Mt. Airy,* 134 N. C., 125. A necessary expense—Const. of N. C., Art. VII, sec. 7; *Webb v. Port Commission,* 205 N. C., 663 (673); *Mfg. Co. v. Aluminum Co.,* 207 N. C., 52 (59). The purpose for which the land was used in the *Andrews case, supra,* being for a public purpose or use, is distinguishable from the present case, where the use was private, for business purposes.

For the reasons given, the judgment below is

Reversed.