COUNTY OF MECKLENBURG AND THE BOARD OF COUNTY COMMIS-
SIONERS FOR MECKLENBURG COUNTY v. PIEDMONT FIRE IN-
SURANCE COMPANY, A CORPORATION.

(Filed 20 May, 1936.)

1. **Taxation B d—City school bonds held by insurance company in the
   county held exempt from taxation by the county.**

   Plaintiff county sought to list for *ad valorem* taxation as solvent credits
   certain bonds issued by a municipality of another county and owned by
   a domestic insurance company having its principal place of business in
   the county. *Held:* The bonds were issued by the municipality as an
   administrative agency of the State to provide schoolhouses and equipment
   necessary to the constitutional school term, N. C. Constitution, Art. I,
   sec. 27, Art. IX, sec. 1, and were for a public purpose, and the statute
   exempting such bonds from taxation, N. C. Code, 7971 (19), in effect at
   the time the bonds were issued, is constitutional and valid, the Legislature
   having been given authority by Art. V, sec. 5, to provide for such exemp-
   tion from *ad valorem* taxation, Art. V, sec. 3, Art. VII, sec. 9, since the
   bonds, although the property of a private corporation, were issued for a
   necessary public purpose and purchased in reliance upon the statutory
   provision exempting them from taxation, and stand upon the same footing
   as the school buildings erected with the proceeds of the bonds.

2. **Statutes A e—**

   A statute will not be declared unconstitutional unless it is plainly and
   clearly so, and any doubt will be resolved in favor of constitutionality.

   DEVIN, J., concurring in result.

APPEAL by plaintiffs from *Shaw, Emergency Judge,* 2 December, 1935,
Extra Term Superior Court of MECKLENBURG. Affirmed.

The following is the agreed statement of facts:

"1. The Piedmont Fire Insurance Company is and was at all times
hereinafter mentioned a corporation, duly chartered, organized, and
existing under and by virtue of the laws of the State of North Carolina,
with its principal place of business in the city of Charlotte, county of
Mecklenburg, State of North Carolina.

"2. That Mecklenburg County is a political subdivision of the State
of North Carolina, and a body corporate. That B. J. Hunter, H. W.
Harkey, A. D. Cashion, R. F. Dunn, and A. H. Wearn are the duly
elected, qualified, and acting members of the board of commissioners of
said county, and as such have the power and authority to assess *ad
valorem* taxation of property located in said county lawfully subject to
taxation.

"3. That on the tax return date in 1935, the Piedmont Fire Insurance
Company owned and held certain bonds issued by the city of Winston-

Salem on 13 May, 1929, for amounts aggregating $107,285, the said bonds being hereinafter referred to.

"4. That at the time the aforesaid bonds were issued by the city of Winston-Salem, at the present time and at all times herein mentioned, the city of Winston-Salem was one of the municipalities of the State of North Carolina, located in Forsyth County.

"5. That the bonds herein referred to were issued pursuant to an ordinance duly adopted by the board of aldermen of the city of Winston-Salem, on 20 January, 1928, calling a special election for the purpose of voting upon an ordinance authorizing the issuance of bonds for $2,500,000 for school purposes; that the election was duly held on 6 March, 1928; that the said ordinance was duly approved; that the said bonds were thereafter issued pursuant to the Municipal Finance Act of the State of North Carolina 'for the purpose of acquiring, constructing, reconstructing, and enlarging public school buildings'; that the records as required by section 4, chapter 214 of the Public Laws of North Carolina for the year 1927, were duly filed in connection with the issuance of the said bonds; that the Private Laws of the State of North Carolina for the year 1927, chapter 232, as amended, were duly complied with; and that the proceeds from the sale of the above bonds were issued to purchase land and erect two junior high schools, to enlargement and equipment of five school buildings, to erect one new elementary school and one Negro high school, and to provide for the extension of school grounds in the city of Winston-Salem, North Carolina, a photostatic copy of one of the said bonds, marked 'Exhibit A,' being hereto attached and made a part hereof, all of the bonds that were owned by the Piedmont Fire Insurance Company, as first above mentioned, being similar in all respects to the bond the copy of which is attached, except as to the amounts and maturities of the same.

"6. That the Piedmont Fire Insurance Company did not list the above mentioned bonds owned by it in the year 1935 for *ad valorem* taxes in Mecklenburg County; that thereafter the county of Mecklenburg, through its duly elected and qualified board of commissioners, listed the said bonds and assessed the same for taxation against the Piedmont Fire Insurance Company, notwithstanding the objection made at the time by the Piedmont Fire Insurance Company; that thereupon the Piedmont Fire Insurance Company gave notice of appeal, filed the necessary bond, all as required by law and in accordance with the statutes pertaining thereto, and appealed from the listing and assessment made by the county of Mecklenburg, acting through its duly elected board of commissioners in connection with the said bonds to the Superior Court of Mecklenburg County, North Carolina.

MECKLENBURG COUNTY *v.* INSURANCE CO.

"7. It is stipulated and agreed by and between the parties to this action that all legal formalities have been complied with and that this case is properly before the court for adjudication.

"CONTENTION OF THE PARTIES.

"The Piedmont Fire Insurance Company contends that the aforesaid bonds are not subject to *ad valorem* taxes in Mecklenburg County, North Carolina, and contends that the same are exempt from such taxation by law, and more particularly by section 7971 (19) of the Consolidated Statutes of North Carolina, which provides: 'The following personal property . . . shall be exempted from taxation: Bonds of this State, . . . and bonds of political subdivisions of this State. . . .' Mecklenburg County contends that the above mentioned bonds are subject to the aforesaid *ad valorem* taxes.

"Henry E. Fisher and J. Clyde Stancill, Attorneys for county of Mecklenburg and Board of Mecklenburg County Commissioners.

"Guthrie, Pierce & Blakeney, Attorneys for Piedmont Fire Insurance Company."

Copy of bond omitted—Jurat by litigants.

The judgment of the court below is as follows: "This cause coming on to be heard before his Honor, Thomas J. Shaw, at the 2 December, 1935, Extra Term of the Superior Court of Mecklenburg County, upon the statement of facts agreed to by the parties, a jury trial having been expressly waived; and, after duly considering the matters in controversy, the court is of opinion that the school bonds issued by the city of Winston-Salem, owned by the Piedmont Fire Insurance Company on the tax return date in 1935, and referred to in the agreed statement of facts are exempt from *ad valorem* taxation and cannot lawfully be taxed by the county of Mecklenburg, and that the said Piedmont Fire Insurance Company is not liable for such taxes on said bonds. The court is not holding that all municipal bonds are necessarily exempt from taxation. However, the Constitution of North Carolina imposes upon the State the duty to provide for the education of the children of the State, and in the present case the State did not so provide, but it empowered the city of Winston-Salem, one of its governmental agencies to do so; if the State had issued its own bonds for this purpose, they would be exempt from taxation, and since the city of Winston-Salem, as a governmental agency of the State, issued the bonds for the aforesaid purpose, the court is of the opinion that they are exempt from taxation either by the State or by any other governmental agency of the State. It is therefore ordered, adjudged, and decreed that the aforesaid bonds are exempt from *ad valorem* taxation by the county of Mecklenburg, and that the same

cannot be lawfully assessed for taxation by Mecklenburg County, and that the listing of the aforesaid bonds and the assessment made upon the same by the board of Mecklenburg County Commissioners for taxes for the year 1935 be and the same hereby are declared to be null and void, and that such listing and assessment be and hereby are vacated and set aside. It is further ordered that the costs of this action be taxed against Mecklenburg County. This 13 December, 1935. Thomas J. Shaw, Judge presiding."

The plaintiffs excepted and assigned error to the judgment as signed, and appealed to the Supreme Court.

*J. Clyde Stancill and Henry E. Fisher for plaintiffs.*
*Guthrie, Pierce & Blakeney for defendant.*

CLARKSON, J. The question involved: Are the bonds issued by the city of Winston-Salem, a municipality, liable for *ad valorem* taxation in Mecklenburg County when owned and held on the tax return day by the Piedmont Fire Insurance Company, a North Carolina corporation, with its principal office and place of business in Mecklenburg County, North Carolina, when the proceeds from the sale of said bonds were used to purchase land and to erect school buildings on the same, and for other public school purposes in the municipality issuing the said bonds? We think not, under the facts and circumstances of this case.

Constitution of North Carolina, Art. V, sec. 3, in part, is as follows: "Laws shall be passed taxing, by a uniform rule, all moneys, credits, investments in bonds, stocks, joint stock companies, or otherwise; and, also, all real and personal property, according to its true value in money."

Article VII, section 7, declares: "No county, city, town, or other municipal corporation shall contract any debt, pledge its faith, or loan its credit, nor shall any tax be levied or collected by any officers of the same except for the necessary expenses thereof, unless by a vote of the majority of the qualified voters therein."

Article VII, sec. 9, provides: "All taxes levied by any county, city, town, or township shall be uniform and *ad valorem* upon all property in the same, except property exempted by this Constitution."

The bonds in controversy were issued in accordance with the Constitution and legislative sanction given the city of Winston-Salem, a municipal corporation. In the agreed statement of facts is the following: "The proceeds from the sale of the above bonds were issued to purchase land and erect two junior high schools, to enlargement and equipment of five school buildings, to erect one new elementary school and one Negro high school, and to provide for the extension of school grounds in the city of Winston-Salem, North Carolina."

N. C. Code, 1935 (Michie), sec. 7971 (19), in part, is as follows: "The following personal property, and no other, shall be exempted from taxation: (1) Bonds of this State, of the United States, Federal farm loan bonds, joint stock land bank bonds, *and bonds of political subdivisions of this State, hereafter issued,*" etc. (Italics ours.)

This same provision has been included in the statutes of the State for many years. The particular bonds under consideration were issued by the city of Winston-Salem on 15 May, 1929. This same exemption was provided for in section 306 of chapter 344 of the Public Laws of 1929, ratified on 19 March, 1929. It was section 306 of chapter 428 of the Public Laws of 1931. It was section 306 of chapter 204 of the Public Laws of 1933. Public Laws 1935, ch. 371 (p. 431), sec. 2, *Property Exempt,* in part: "The following property shall be exempt from taxation under this article: (2) Property passing to or for the use of the State of North Carolina, or to or for the use of municipal corporations within the State or other political subdivisions thereof, for exclusively public purposes," etc. The General Assembly has followed a uniform practice of expressly exempting an *ad valorem* tax to be placed upon the bonds of the State of North Carolina and of "the political subdivisions of this State."

The city of Winston-Salem, being a political subdivision of this State, under express and clear language of the General Assembly, these bonds for school purposes were exempt from an *ad valorem* tax. The municipality of Winston-Salem, a political subdivision of the State, issued them and the defendant purchased them as exempt from taxation. To now tax them would, at least, savor of bad faith; but, if the exemption was unconstitutional, this could be done, as the Constitution was in existence when the bonds were issued. We cannot see how the exemption impinges the Constitution.

Const. of N. C., Art. I, sec. 27, declares: "The people have the right to the privilege of education, and it is the duty of the State to guard and maintain that right."

Art. IX, sec. 1: "Religion, morality, and knowledge being necessary to good government, and the happiness of mankind, schools and the means of education shall forever be encouraged. Sec. 2: The General Assembly, at its first session under this Constitution, shall provide by taxation and otherwise for a general and uniform system of public schools, wherein tuition shall be free of charge to all children of the State between the ages of six and twenty-one years. And the children of the white race and the children of the colored race shall be taught in separate public schools; but there shall be no discrimination in favor of, or to the prejudice of, either race. Sec. 3. Each county of the State shall be divided into a convenient number of districts, in which one or

more public schools shall be maintained at least six months in every year; and if the commissioners of any county shall fail to comply with the aforesaid requirements of this section, they shall be liable to indictment."

The General Assembly of 1899 made the first appropriation of $100,000 for State schools. In 1931 (Public Laws 1931, ch. 430), under the McLean Bill—a compromise measure—all the schools were taken over by the State to be maintained for six months each year, and an appropriation of $16,500,000 each year was made. About $12,500,000 from ,the general fund and 15c. *ad valorem* tax on land. The General Assembly of 1933 increased the school term to eight months (ch. 562, Public Laws 1933), took the tax off of land and substituted a 3c. sales tax to aid the schools. There was also an appropriation, known as the Tax Reduction Fund, of $1,500,000 for each year. In 1935 the State appropriation was $20,031,000 for the first year and $20,900,000 for the second year (Public Laws 1935, ch. 455), with a 3c. sales tax and no tax on land.

In *Julian v. Ward,* 198 N. C., 480 (482), citing authorities, it is said: "Under these and other pertinent sections of the Constitution, it has been held in this jurisdiction that these provisions are mandatory. It is the duty of the State to provide a general and uniform State system of public schools of at least six months in every year wherein tuition shall be free of charge to all the children of the State between the ages of six and twenty-one. It is a necessary expense and a vote of the people is not required to make effective these and other constitutional provisions in relation to the public school system of the State. Under the mandatory provision in relation to the public school system of the State, the financing of the public school system of the State is in the discretion of the General Assembly by appropriate legislation, either by State appropriation or through the county acting as an administrative agency of the State."

The Constitution of North Carolina, Art. V, sec. 5, *supra,* is unmistakable in its language: "Property belonging to the State or to a municipal corporation shall be exempt from taxation."

Before the schools were taken over by the State, under the Constitution, the municipal corporations were agencies of the State—"Political subdivisions of this State." Under the Constitution these schools in Winston-Salem are not subject to *ad valorem* tax, nor the bonds issued under legislative authority to build them subject to *ad valorem* tax.

When a State steps down from her sovereignty and goes into business enterprises to compete with individuals, then the above principle does not apply. *Board of Finance Control of Buncombe Co. v. Henderson Co.,* 208 N. C., 569, Anno. 101 A. L. R., 783; *Benson v. Johnston Co.,* 209 N. C., 751.

In *Webb v. Port Comm.*, 205 N. C., 663 (674-5), it is said: "The provision in the act by which the Port Commission was created that its property and the bonds that may be issued and sold as authorized by the act shall be exempt from taxation by the State, or any of its political subdivisions, is valid. The General Assembly has the power to so provide, for the reason that the property of the Port Commission will be held, and the bonds will be issued solely for public purposes. Whatever doubt there may be as to the validity of this provision, by reason of section 3 of Article V of the Constitution of this State, must be, under well settled principles of constitutional construction, resolved in favor of its validity." *Hinton v. State Treasurer,* 193 N. C., 496.

The cases cited by plaintiffs are not applicable to the facts in the present action—they do not apply to bonds for "public purposes," such as these school bonds, but private and such as *quasi*-public corporations, as drainage bonds. In our research, we can find no authority in this State that "school bonds" like the present, issued under legislative authority by a municipality for building schools for free education of the children of the State, as contemplated by the Constitution, has ever been taxed. Perhaps these great schools in the cities and counties of the State would never have been built if the bonds were taxable. There are now 914 high schools and 4,505 elementary schools in our State. In the high schools 156,593 and in the elementary schools 736,055 pupils are enrolled.

Defendant bought these "school bonds" under an act of the General Assembly which exempted them from taxation. They were purchased by the defendant with this understanding. The Constitution of the State, if not in direct language, certainly by implication, allows them to be exempted, as the money was for a public purpose, to wit, schools. To now tax them would destroy confidence and would be a semblance of unfair dealing, and entail loss by defendant and all who purchased these tax-free "school bonds," under legislative sanction. To say the least, it would impair the credit of the State, as no one would put confidence in a State which would enact a statute to exempt such school bonds from taxation, and purchased tax-free, and thereafter allow them to be taxed. Such type of dealing would be reprehensible in an individual, and the legal and moral aspect would apply to an agency of the State—the bonds of political subdivisions of this State. By taxing defendant corporation, the effect is to tax, no doubt, widows, guardians, and other fiduciaries who purchased these tax-free bonds under legislative sanction and who have done so no doubt to live off of the interest on the bonds, or to provide support for minors.

In *Hinton v. State Treasurer, supra,* at p. 499 (quoting from *Sutton v. Phillips,* 116 N. C., at p. 504), it is declared: " 'While the courts have the power, and it is their duty in proper cases, to declare an act of the

Legislature unconstitutional, it is a well recognized principle that the courts will not declare that this coördinate branch of the government has exceeded the powers vested in it unless it is plainly and clearly the case. *If there is any reasonable doubt, it will be resolved in favor of the lawful exercise of their powers by the representatives of the people.* (Italics ours.) . . . (p. 505) It cannot be said that this act is plainly and clearly unconstitutional. The doubt, if any, must be resolved in favor of the General Assembly.' "

For the reasons given, the judgment of the court below is
Affirmed.

DEVIN, J., concurs in the result reached by the Court that school bonds of the city of Winston-Salem in the hands of an investor residing in Mecklenburg County may not be locally assessed for taxation, but regards the citation of *Benson v. Johnston County,* 209 N. C., 751, as unnecessary to this conclusion. In that case it was held that certain real property belonging to a municipal corporation was not exempt from taxation. Here, upon a different ground a different result is reached.

The writer, in his dissent in the *Benson case, supra,* expressed his view that the positive and unmistakable language of the Constitution, Art. V, sec. 5, which declares that "property belonging to the State or to a municipal corporation shall be exempt from taxation," may not be amended or qualified by judicial construction.