TOWN OF WEAVERVILLE v. GRAHAM K. HOBBS, COMMISSIONER OF THE WORLD WAR VETERANS LOAN FUND OF NORTH CAROLINA.

(Filed 5 January, 1938.)

**Taxation § 19—Property acquired by State and held for benefit of Veterans Loan Fund is exempt from taxation.**

A loan from the North Carolina Veterans Loan Fund was secured by a deed of trust, and upon default, the deed of trust was foreclosed and the property transferred to the State by trustee's deed, and the property was thereafter held by the State for the benefit of the fund, and rented, and the income therefrom used and applied exclusively for this purpose. Ch. 155, Public Laws of 1925, as amended. *Held:* The property is exempt from taxation by the municipality in which the land lies, by operation of Art. V, sec. 5, of the Constitution of the State, since the property is owned by the State and used by it for the governmental purpose of assisting World War Veterans in the acquisition of homes, and it being immaterial whether the property is. directly used for this purpose or rented and the income therefrom used and applied exclusively for this purpose. *Andrews v. Clay County*, 200 N. C., 280, cited and approved. *Board of Financial Control v. Henderson County*, 208 N. C., 569; *Benson v. Johnston County*, 209 N. C., 751; and *R. R. v. Comrs. of Carteret*, 75 N. C., 474, cited and distinguished. Ch. 445, sec. 2, Public Laws of 1933, and ch. 371, sec. 2, Public Laws of 1935, *held* inapplicable as referring to inheritance and estate taxes.

CONNOR, J., concurring.

STACY, C. J., dissenting.

SCHENCK, J., concurs in this dissent.

CLARKSON, J., dissenting.

APPEAL by plaintiff from *Johnston, J.,* at September Term, 1937, of BUNCOMBE. Affirmed.

This was a controversy without action, submitted upon the following agreed statement of facts:

"1. That the town of Weaverville is a municipal corporation, created and existing under and by virtue of the laws of North Carolina, and is located within Buncombe County in said State.

"2. That Graham K. Hobbs is Commissioner of the North Carolina World War Veterans Loan Fund.

"3. That prior to and on 20 August, 1928, C. E. Hornaday and wife, Louise M. Hornaday, were owners in fee simple of the following described piece, parcel, or lot of real estate, located within the limits of the town of Weaverville: (Description omitted.)

"4. That on said date C. E. Hornaday and wife, Louise M. Hornaday, procured a loan of $3,000 from the North Carolina World War Veterans Loan Fund, and on said date, for the purpose of securing said loan of

money, executed and delivered to the Citizens National Bank of Raleigh, trustee, a deed of trust, conveying the above described piece, parcel, or lot of land, which deed of trust is recorded in the office of the register of deeds for Buncombe County, North Carolina, in Deed of Trust Book 300, on page 101.

"5. That on 30 December, 1932, after default by the said C. E. Hornaday and wife, Louise M. Hornaday, in the terms, conditions, and stipulations contained in said deed of trust, the property was foreclosed by the North Carolina Bank & Trust Company, successor trustee, and was conveyed by the said successor trustee to the State of North Carolina by a trustee's deed, which is duly recorded in the office of the register of deeds for Buncombe County, North Carolina, in Deed Book 456, on page 5. That the State of North Carolina is now the owner of said property, the same being held by the said State for the use and benefit of the World War Veterans Loan Fund, created under chapter 155, Public Laws of 1925, as amended by chapter 97, Public Laws of 1927, chapter 298, Public Laws of 1929, chapter 55, Public Laws of 1933, chapter 438, Public Laws of 1935.

"6. That immediately after the foreclosure of the herein described real estate, the defendant paid all taxes due to the town of Weaverville which had been assessed and which had accrued against C. E. Hornaday and wife, the former owners of said property, for the year 1932, and prior years. That for the year 1933, and subsequent years, the State of North Carolina and the defendant, and his predecessors in office, have not listed the said real property for taxation in Buncombe County, contending that said property, while owned by the State of North Carolina, for the purposes aforesaid, was totally exempt from all ad valorem taxation by the said county and the town of Weaverville. That said property has not been listed or assessed for taxation by Buncombe County or by the town of Weaverville for the years 1933, 1934, 1935, and 1936, the said property should have been listed and assessed for taxation by Buncombe County at a valuation of $2,000, and the town of Weaverville was entitled to list and assess the property for taxation for each of said years at a valuation of $2,000, and subjected to tax at rates levied by said town of Weaverville for each of said years as follows: 1933—$1.00; 1934—$1.00; 1935—$1.18; 1936—$1.20; for each $100.00 value of said property, and in the event it is determined herein that said property was subject to taxation for the said years, the defendant is indebted to the plaintiff town of Weaverville, for taxes for all of said years, the total sum of $87.50, which said amount is the net sum of said taxes, without addition thereto of penalties and interest.

"7. That located on said lot of land is a five-room dwelling that is, and has been from time to time since said property was acquired by the State

of North Carolina, for the use and benefit of the World War Veterans Loan Fund, rented to private parties, and that the defendant has from time to time collected rents on said property since the same was conveyed to the State of North Carolina on 30 December, 1932, all of which rent so collected has been held and applied by the State of North Carolina for the exclusive use and benefit of the World War Veterans Loan Fund hereinbefore mentioned."

### CONTENTIONS OF THE PARTIES.

"1. The plaintiff contends that under the facts herein stipulated and agreed upon, the property of the defendant herein described is not exempt from taxation.

"2. The defendant contends that the property herein described is exempted from taxation.

"That if from the foregoing statement of facts and contentions of the parties, the court is of the opinion that the said property is exempt from taxation by the plaintiff town of Weaverville for the years 1933, 1934, 1935, and 1936, the court shall so adjudge and declare; but if the court is of the opinion that said property is subject to taxation by the town of Weaverville for the years 1933, 1934, 1935, and 1936, the court shall adjudge and declare that the said property shall be listed for taxation by the board of commissioners of Buncombe County, North Carolina, for said years at the valuation hereinbefore recited, and that the tax shall be assessed on said property amounting to the total sum hereinbefore recited, without addition of penalties or costs, to be divided among said years in accordance with the amounts determined from the rates of tax levied in each of said years by the plaintiff, the town of Weaverville."

Upon these facts, the court below adjudged that the described property was exempt from taxation by the plaintiff. The plaintiff appealed.

*Edward L. Loftin for plaintiff, appellant.*
*Attorney-General Seawell and Assistant Attorneys-General McMullan and Bruton for defendant.*

DEVIN, J. This appeal presents for review the ruling of the court below that, upon the facts stipulated and agreed by the parties, the property described is exempt from taxation by the town of Weaverville.

The statement of agreed facts contains this admission: "That the State of North Carolina is now the owner of said property, the same being held by the said State for the use and benefit of the World War Veterans Loan Fund." The title to the property was conveyed by deed to the State of North Carolina, and is now so held. The act of the General Assembly of North Carolina which created this fund and made

provision for its administration (ch. 155, Public Laws of 1925) was considered by this Court in *Hinton v. State Treasurer,* 193 N. C., 496, 137 S. E., 669, and it was there held, *Clarkson, J.,* speaking for the Court, that the act was for a public purpose of the State, and that the issue of the bonds of the State and the pledge of its taxing power therefor were constitutional and valid.

The Constitution of North Carolina contains this mandatory provision, Art. V, sec. 5 : "Property belonging to the State, or to municipal corporations, shall be exempt from taxation."

The fund created and set apart by the State, under the Act of 1925, for the worthy purpose of assisting World War veterans in the acquisition of homes, belongs to the State. The mortgages and deeds of trust, representing loans made pursuant to the statute, belong to the State, and equally real property acquired by the State by reason of the foreclosure of one of its deeds of trust, and conveyed by deed to the State, belongs to the State, and therefore comes directly within the letter and the purpose of the constitutional prohibition against taxation of "property belonging to the State." Whether the real property, the subject of this controversy, is used directly by the State, or the rents derived therefrom are held and applied by the State as additions to the' State's Veteran Loan Fund, is immaterial since its use is exclusively for governmental purposes. The rents from such property, while owned by the State, would be in the same category with interest collected on outstanding loans.

In *Andrews v. Clay County,* 200 N. C., 280, 156 S. E., 855, *Connor, J.,* writing the opinion of the Court, uses this language: "The provision in the first clause of section 5 of Article V of the Constitution of North Carolina, by which property belonging to or owned by a municipal corporation, is exempt from taxation, is self-executing, and by its own force, without the aid of. legislation, exempts such property from taxation by the State or by the political subdivision of the State in which it is located, because of its ownership, and without regard to the purpose for which such property was acquired and held by the corporation. With respect to such property, when lawfully acquired and held by statutory authority, new or additional conditions cannot be imposed by the General Assembly as prerequisites for its exemption from taxation. 37 Cyc., p. 886. The language of the constitutional provision is so clear and unambiguous that there is no room for judicial construction. The fact that social, economic, and political conditions in this State have undergone great changes since the adoption of our present Constitution, resulting in an enlargement of the functions of municipal corporations to meet the requirements of changed conditions, would not justify a construction of this provision which would in effect result in its amendment by the courts and not by the people.

"If required to adopt the construction of the sections of the machinery acts relied on by the defendants in the instant case, in support of their contention that by virtue of said sections property belonging to or owned by a municipal corporation is not exempt from taxation by the State or by the political subdivision of the State in which such property is located, unless such property is held wholly and exclusively for a public purpose, we should hold that said sections of the machinery acts, in so far as they have that effect, are unconstitutional and void."

The facts upon which the decision of this Court in *Board of Financial Control v. Henderson County,* 208 N. C., 569, 181 S. E., 636, and *Benson v. Johnston County,* 209 N. C., 751, 185 S. E., 6, were based, are distinguishable from those in the case at bar. Chapter 445, Acts of 1933, sec. 2, and chapter 371, Acts of 1935, sec. 2 (codified in Michie's North Carolina Code as section 7880 [2]), refer to inheritance and estate taxes imposed by the State.

In *R. R. v. Comrs. of Carteret,* 75 N. C., 474, cited by plaintiff, it was held that Art. V, sec. 5, of the Constitution did not exempt the physical property of the Atlantic and North Carolina Railroad Company from taxation, although the State of North Carolina owned a majority of the capital stock of the corporation. The decision in that case was addressed to a question materially different from the one presented here.

In 101 A. L. R., 783, where the case of *Board of Financial Control v. Henderson County, supra,* is reported, will be found annotations collecting authorities from other jurisdictions on this subject.

We conclude that the learned judge who heard this case below has correctly decided the question presented, and that the judgment must be
Affirmed.

CONNOR, J., concurring: Is property owned by or belonging to the State of North Carolina subject to taxation by the county, city, or town in which such property is located?

This is the question presented by this appeal. The answer is found in section 5 of Article V of the Constitution of North Carolina, which is as follows:

"Property belonging to the State or to municipal corporations shall be exempt from taxation."

There is no ambiguity in this language. Its meaning is plain. The language is clear and is not subject to judicial construction in order that a policy with respect to taxation in conflict with its provisions may be sustained. Property belonging to the State is exempt from taxation, because of its ownership, without regard to the purpose for which it was acquired or for which it is owned by the State.

I do not think that the suggestion that the interpretation of section 5 of Article V of the Constitution in the opinion of this Court in *Andrews v. Clay County,* 200 N. C., 280, is *obiter dicta,* can be successfully maintained.    The decision in that case was not overruled in *Board of Financial Control v. Henderson County,* 208 N. C., 569, or in *Benson v. Johnston County,* 209 N. C., 751, nor was the interpretation of section 5 of Article V of the Constitution in the opinion in that case disapproved by this Court.    The cases were distinguished, whether rightly so or not, need not now be discussed.

I concur in the opinion of the Court in the instant case that the judgment of the Superior Court should be affirmed.

STACY, C. J., dissenting:  It was held in the *Carteret County case,* 75 N. C., 474, decided in 1876, that when "the State steps down from her sovereignty and embarks with individuals in business enterprises," its property so employed is not exempt from taxation under Art. V, section 5, of the Constitution.    The present decision runs counter to this interpretation and abandons the doctrine there announced.    Note, 3 A. L. R., 1439.

The statutory exemption, it seems to me, affords no encouragement or support for this reversal of interpretation and abandonment of the State's long-established policy.    By correct interpretation, the legislative intent fully accords with the rule and practice heretofore adopted and declared by the Court.

Nor is the *dictum* in the *Clay County case,* 200 N. C., 280, 156 S. E., 855, in any way controlling.    The property there considered was clearly held and used for a public purpose.    Moreover, this *dictum* was not followed in the *Henderson County case,* 208 N. C., 569, 181 S. E., 636, or the *Johnston County case,* 209 N. C., 751, 185 S. E., 6.

My vote is for a reversal.

SCHENCK, J., concurs in this dissent.

CLARKSON, J., dissenting:  I cannot agree with the majority opinion. Art. V, sec. 5, of the Constitution of North Carolina, is as follows: "Property belonging to the State, or to municipal corporations, shall be exempt from taxation.    The General Assembly may exempt cemeteries and property held for educational, scientific, literary, charitable, or religious purposes; also, wearing apparel, arms for muster, household and kitchen furniture, the mechanical and agricultural implements of mechanics and farmers; libraries and scientific instruments, or any other personal property, to a value not exceeding three hundred dollars." N. C. Code 1935 (Michie), section 7880 (2), reads as follows: "The

following property shall be exempt from taxation under this article: (a) Property passing to or for the use of the State of North Carolina, or to or for the use of municipal corporations within the State or other political subdivisions thereof, for exclusively public purposes," etc. To be sure, this section applies to inheritance tax, but it indicates the construction the General Assembly put on it as to the meaning of Art. V, sec. 5, of the Constitution.

Section 7880 (177) is as follows: "Whenever in any law or act of incorporation, granted either under the general law or by special act, there is any limitation or exemption of taxation, the same is hereby repealed, and all the property and effects of all such corporations, *other than the bonds of this State, and of the United States Government,* shall be liable to taxation, *except property belonging to the United States and to the municipal corporations,* and property held for the benefit of churches, religious societies, charitable, educational, literary, or benevolent institutions or orders, and also cemeteries: Provided, *that no property whatever,* held or used for investment, speculation, *or rent shall be exempt, other than bonds of this State and of the United States Government,* unless said rent or the interest on or income from such investment shall be used exclusively for religious, charitable, educational, or benevolent purposes, or the interest upon the bonded indebtedness of said religious, charitable, or benevolent institutions." (Italics mine.)

Under subchapter (2), "Assessment and Listing for Taxes," is section 7871 (17), which is as follows: "The following real property, and no other, shall be exempted from taxation: (1) Real property, if directly or indirectly owned by the United States or this State, however held, and real property lawfully owned and held by counties, cities, townships, or school districts, *used wholly and exclusively for public or school purposes,"* etc. (Italics mine.)

The exemption of Federal and State property is stated in the same sentence with that of local governments without even a period or a semicolon separating the provision as to Federal and State government property from that dealing with the property of local units. Apparently, the phrase "used wholly and exclusively for public or school purposes" was intended to apply equally to the property of the Federal, State, and local governments. Certainly there is no clear indication that the General Assembly intended to create two distinct classes of exemptions. The phrase "however held" does not affect this interpretation; at most, it is merely a clarifying phrase to insure the exemption of State and Federal property which comes within the exempted class, but is held by some agency or instrumentality in trust for the benefit of one of the governments. Under the rules of construction, exemption provisions are to be construed strictly against the exemption and all doubts are to be

resolved against the exemption. However, it does not appear necessary to rely on this rule here, as it is not to be supposed that the General Assembly intended to lay down two rules with respect to the exemption of governmental property. The contrary view would result in a holding to the effect that the General Assembly laid down a more liberal rule for the Federal and State governments than for the local governments, and to this extent discriminated against the latter. The reasoning of such a view is not convincing.

These acts of the General Assembly clearly indicate that the constitutional exemption applies to property "used wholly and exclusively for public or school purposes." When Art. V, sec. 5, of the Constitution was adopted in 1868, the State and municipalities owned property solely for public or school purposes. We must construe the Constitution with the setting which existed when it was adopted and in the light of that day. In the Constitution of the State of North Carolina annotated by Connor & Cheshire, it was so construed (p. 277): "II. Property of the State. The provision of this section, exempting from taxation property belonging to the State, does not embrace the interest of the State in business enterprises, such as railroads and the like, but applies to the property of the State held for State purposes. *R. R. v. Comrs.,* 75 N. C., 474."

The majority opinion relies largely on the *obiter dicta* in *Andrews v. Clay County,* 200 N. C., 280. This *dicta* was disapproved in *Board of Financial Control v. Henderson County,* 208 N. C., 569 (571-2).

In *Benson v. Johnston County,* 209 N. C., 751 (755), speaking of the *Henderson County case, supra,* it is said: "We distinguished the case of *Andrews v. Clay County,* 200 N. C., 280, and said at p. 574: 'The town of Andrews was operating a municipal electric plant—a public use or purpose. *Fawcett v. Mount Airy,* 134 N. C., 125. A necessary expense—Const. of N. C., Art. VII, sec. 7; *Webb v. Port Commission,* 205 N. C., 663 (673); *Mfg. Co. v. Aluminum Co.,* 207 N. C., 52 (59). The purpose for which the land was used in the *Andrews case, supra,* being for a public purpose or use, is distinguishable from the present case, where the use was private, for business purposes.' " The interpretation of the Constitution was first considered in *R. R. v. Comrs. of Carteret,* 75 N. C., 474 (476). It is there said: "But where the State steps down from her sovereignty and embarks with individuals in business enterprises, the same considerations do not prevail. . . . At any rate, we do not think the exemption in the Constitution embraces the interest of the State in business enterprises, but applies to the property of the State held for State purposes."

In interpreting the Constitution there are several factors to be kept constantly in mind: (1) *Only one class of property is exempted from*

*taxation by the Constitution.* It is "property belonging to the State or to a municipal corporation," and the General Assembly has said "used wholly and exclusively for public or school purposes." Beyond this class *mandatorily* exempted, there is a second class which the General Assembly is *permitted* to exempt. There can be no other exemptions. The General Assembly "has no power to make other exemptions. It is impliedly forbidden to do so." *Loan Association v. Commissioners,* 115 N. C., 410 (413). (2) *The general rule is that all property in the State is liable to taxation.* "The general rule established by the Constitution is that all property in this State is liable to taxation, and shall be taxed in accordance with a uniform rule. Exemption of specific property, because of its ownership by the State or by municipal corporations, or because of the purposes for which it is held and used, is exceptional." *Hospital v. Rowan County,* 205 N. C., 8 (10). (3) *Provisions exempting property from taxation are to be strictly construed against the exemption.* The accepted rule of construction applicable to exemptions in that they "should be construed strictly, when there is room for construction, against exemption and in favor of taxation." *Hospital v. Rowan County, supra,* citing *Trustees v. Avery County,* 184 N. C., 469; *United Brethren v. Comrs.,* 115 N. C., 489. Because of this rule of strict construction, if the Court has any doubts as to the applicability of an exemption, "they should be resolved in favor of liability to taxation." *United Brethren v. Comrs., supra,* (497). "No exemptions should be made or upheld unless clearly coming within the constitutional provision, . . ." *Southern Assembly v. Palmer,* 166 N. C., 75 (82). The United States Supreme Court has laid down an even stronger rule, as follows: No claim of exemption from taxation can be sustained *unless established beyond all doubt.* (Italics mine.) *Railroad v. Supervisors,* 93 U. S., 595; *Railroad v. Guffey,* 120 U. S., 569.

In *Village of Watkins Glen v. Hager, County Treasurer,* 252 N. Y. S., 146, 140 Misc., 816, which cited the *Carteret County case, supra,* as one of many cases to the effect that the exemption of property from taxation applies only when the property is "actually devoted to a public use, or to some purpose or function of government." The note in 3 A. L. R., 1439, at pp. 1441, 1442, cites the *Carteret County case, supra,* in support of the same principle; and the United States Supreme Court, in *Power & Light Co. v. Seattle,* 291 U. S., 619 (636), 34 S. C. Rep., 542 (550), 78 L. Ed., 1025 (1036), likewise cited the *Carteret County case, supra,* as authority for this position. It seems clear that not only this Court but other courts and text-writers generally regarded the principle of the *Carteret County case, supra,* as controlling in this State until the *dicta* (already referred to above) in *Andrews v. Clay County, supra.* My view here is that this Court should be bound by the principle of the

earlier case rather than follow the *dicta* in the *Clay County case, supra,* which has been disapproved and will result in confusion when there are two opposing lines of decisions on the same proposition in the same jurisdiction.

As between State and local governments the problem is much the same as between the Federal and state governments; concerning the latter, *Justice Stone,* in *Metcalf & Eddy v. Mitchell,* 269 U. S., 514, 523-24, wrote that the limitation upon the taxing power of each, so far as it affects the other, "must receive a practical construction which permits both to function with the minimum interference each with the other; and that limitation cannot be so varied or extended as seriously to impair either the taxing power of the government imposing the tax . . . or the appropriate exercise of the functions of the government affected by it."   This statement is quoted with approval by *Chief Justice Hughes* in the recent case of *James v. Dravo Contracting Co.,* Supreme Court Law Ed. Advance Opinions, Vol. 82, No. 5, p. 125.

Since *Chief Justice Marshall,* in 1819, laid down the fundamental that "the power to tax involves the power to destroy" (*Marbury v. Madison,* 4 Wheaton, 316, 431), we have come to recognize another truth—the power to exempt from taxation also involves the power to destroy.   Used by governments as a shield, it operates as a subsidy of governmental excursions into the field of private enterprise thus placing the private competitor, who bears his share of taxes, at such a disadvantage that he is fortunate if he is able to survive.

That only the property of the State, or a municipality, devoted to a public purpose and use, should be tax-exempt is supported by the strongest reasons.   The Supreme Court of the United States has noted "A very large proportion of the property within the states is employed in the execution of the powers of the government," and if we too liberally "exempt from the liability to contribute to the revenue of the states it is manifest the state governments would be paralyzed."   *Railroad Co. v. Penniston,* 18 Wall., 5 (33).   Again, in *Willcuts v. Bunn,* 282 U. S., 216, at p. 225, *Chief Justice Hughes* observed, "The power to tax is no less essential than the power to borrow money, . . . it is not necessary to cripple the former by extending the constitutional exemption to those subjects which fall within the general application of nondiscriminatory laws, and where no direct burden is laid upon the governmental instrumentality, and there is only a remote, if any, influence upon the exercise of the functions of government."

A judicial policy of strictly delimiting governmental exemptions appeals to every sense of fairness and justice.   It is settled that property of governments used in the discharge of necessary governmental functions are exempted from taxation; even if it were considered wise to alter this policy (and such is not suggested), this Court could not do so.

However, there is abundant authority, recent as well as early, to the effect that property of state and municipal governments not dedicated to public uses and purposes should bear its proportionate share of the tax burden.

As to property which the General Assembly is permitted to exempt from taxation it has long been settled that the exemption is not controlled by the mere determination of ownership, but turns upon the use to which the property itself is put. *Loan Association v. Commissioners,* 115 N. C., 410; *United Brethren v. Comrs.,* 115 N. C., 489; *Davis v. Salisbury,* 161 N. C., 56; *Corporation Commission v. Construction Co.,* 160 N. C., 582 (588).

To assume that past leaders foresaw, and provided in detail for the solution of, our every problem is to credit them with a clairvoyance for which the most inspired leadership does not contend; to assume that we can foretell, and provide rigid rules for all the difficulties of posterity would assume a position of which no learned judge today would be guilty. Our primary duty is to face the compelling demands of today and in the light of those demands to achieve, as far as may be, what *Justice Cordozo* has poetically called "that symmetry that men call Justice, the adaption of the rule of life to the symmetry they call Divine."

"A word is not a crystal, transparent and unchanged; it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used," says *Mr. Justice Holmes* in *Towne v. Eisner,* 245 U. S., 418. *Cole v. Fibre Co.,* 200 N. C., 484 (489).

The Constitution, Art. V, sec. 5, should be construed in the present day situation. We have millions of acres of land in North Carolina taken off the tax books for governmental purposes, public highways, schools, parks, etc. We have millions of dollars loaned in this State by the H. O. L. C. on land and millions of dollars loaned in this State by the building and loan associations, corporations, and individuals that lend on land. This decision would mean that the H. O. L. C. would have rental property that it purchased at foreclosure sales, the land free of tax, and the building and loan and others would have to pay taxes. This is not justice. It creates favoritism and special privileges, which the law abhors. The property in the present case was purchased by the Commissioner of the World War Veterans Loan Fund of North Carolina, it is being rented, and there is no good reason under the Constitution and statutes of the State, in law or in equity, why it should be exempt from taxes. Our government is founded on equal rights to all and special privileges to none.

It may be that land purchased by the HOLC can be taxed, U. S. C. A., Vol. 13, sec. 1433.